# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUCIANO DI SCALA, individually and on behalf of all others similarly situated, | Case. No. 1:20-cv-05865-NRB |
| Plaintiff, | |
| v. | Hon. Naomi Reice Buchwald |
| PROSHARES ULTRA BLOOMBERG CRUDE OIL, PROSHARE CAPITAL MANAGEMENT LLC, PROSHARES TRUST II, MICHAEL L. SAPIR, TIMOTHY N. COAKLEY, and TODD B. JOHNSON, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF EDMUND JIN'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

**TABLE OF CONTENTS**

**Page**

I.      FACTUAL BACKGROUND ................................................................................................ 2

II.     PROCEDURAL HISTORY ............................................................................................... 5

III.    ARGUMENT ................................................................................................................... 5

    A.   Mr. Jin Should be Appointed as Lead Plaintiff ................................................. 5

        1.   Mr. Jin Timely Filed His Motion. ............................................................ 6

        2.   Mr. Jin Has the Largest Financial Interest ............................................. 7

        3.   Mr. Jin Satisfies the Relevant Requirements of Rule 23 ......................... 7

            a.   Mr. Jin's Claims Are Typical ................................................. 8

            b.   Mr. Jin Is an Adequate Representative. ............................... 9

    B.   Approving Mr. Jin's Choice of Counsel Is Appropriate ................................. 10

IV.    CONCLUSION .............................................................................................................. 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Cendant Corp.*,
    264 F.3d 201 (3d Cir. 2001)..................................................................................................10

*In re Deutsche Bank AG Sec. Litig.*,
    328 F.R.D. 71 (S.D.N.Y. 2018) ...............................................................................................8

*In re HEXO Corp. Sec. Litig.*,
    No. 19 CIV. 10965 (NRB), 2020 WL 5503634 (S.D.N.Y. Sept. 11, 2020) ............................10

*Hom v. Vale, S.A.*,
    No. 1:15-cv-9539-GHW, 2016 WL 880201 (S.D.N.Y. Mar. 7, 2016).....................................9

*Lipetz v. Wachovia Corp.*,
    No. 08 Civ. 6171 (RJS), 2008 WL 4615895 (S.D.N.Y. Oct. 10, 2008) ...................................9

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) ..............................................................................................8

*Rosi v. Alcaris Therapeutics, Inc.*,
    No. 19-CV-7118 (LTS)(JLC), 2019 WL 5778445 (S.D.N.Y. Nov. 6, 2019)............................6

*Salinger v. Sarepta Therapeutics, Inc.*,
    No. 19-CV-8122 (VSB), 2019 WL 6873807 (S.D.N.Y. Dec. 17, 2019)..............................6, 8

*Stirling v. Ollie's Bargain Outlet Holdings, Inc.*,
    No. 19-CV-8647, 2019 WL 6619493 (S.D.N.Y. Dec. 5, 2019) .................................................8

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*,
    No. 10-cv-01405 (SLT)(RER), 2011 WL 3511057 (E.D.N.Y. May 31, 2011)........................9

**Rules & Statutes**

Fed. R. Civ. P. 23 ................................................................................................... *passim*

15 U.S.C. § 78u-4 *et seq.* ........................................................................................ *passim*

**Docketed Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    No. 04-cv-8141 (S.D.N.Y.)......................................................................................................11

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
    No. 08-md-1963 (S.D.N.Y.) .....................................................................................................11

*In re Satyam Comput. Servs. Ltd. Sec. Litig.*,
No. 09-md-2027 (S.D.N.Y.) ................................................................................................................11

Edmund Jin[1] ("Mr. Jin"), pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), respectfully submits this memorandum of law in support of his motion ("Motion") to appoint him as Lead Plaintiff in the above-captioned action ("the Action") and approve his selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel.  Mr. Jin specifically seeks to be appointed on behalf of a putative class of those who purchased or otherwise acquired ProShares Ultra Bloomberg Crude Oil ("UCO" or the "Company") securities from March 6, 2020 through April 27, 2020, inclusive (the "Class Period"), who were damaged thereby (the "Class").  The Action has been brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against Defendants UCO, Proshare Capital Management LLC., Proshares Trust II, Michael L. Sapir, Timothy N. Coakley, and Todd B. Johnson (collectively "Defendants").

Under the PSLRA, this Court is instructed to appoint the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In that regard, the Court is required to determine which member of the Class has the "largest financial interest" in the relief sought in this litigation, and also whether that movant has made a *prima facie* showing that it is a typical and adequate Class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Mr. Jin, a sophisticated investor with extensive prior experience overseeing counsel, respectfully submits that he should be appointed Lead Plaintiff

---

[1] Mr. Jin has been assigned the legal title to the claims arising from investments in UCO securities by his close friend and business partner, Jin Yuan Zhao ("Mr. Zhao").  *See* Assignment of Claims by Mr. Zhao ("Assignment"), attached as Exhibit A to the Declaration of Francis P. McConville (the "McConville Decl."); *see also* Declaration of Mr. Jin ("Jin Decl."), attached as Exhibit B the McConville Decl.

because he has the "largest financial interest" in this litigation and has made the requisite showing of typicality and adequacy required by the standards of the PSLRA.

As set forth herein, Mr. Jin has a financial interest of ***$18,208,257.26*** in the outcome of the Action.[2]  As such, Mr. Jin possesses a substantial financial interest in the relief sought by this litigation—an interest believed to be greater than that of any competing movant.  In addition to asserting the largest financial interest, Mr. Jin readily satisfies the relevant requirements of Rule 23 because his claims are typical of those of all members of the Class and he will fairly and adequately represent the interests of the Class.  Moreover, as evidenced in the Jin Decl., Mr. Jin is a sophisticated investor with ample experience and resources to effectively manage the Action if appointed as Lead Plaintiff.  Finally, the adequacy of Mr. Jin has been demonstrated through his selection of Labaton Sucharow, a law firm with substantial experience in successfully prosecuting securities class actions, to serve as Lead Counsel for the Class.

Accordingly, Mr. Jin respectfully requests that the Court appoint him Lead Plaintiff and otherwise grant his motion.

## I.    FACTUAL BACKGROUND[3]

UCO is an exchange traded fund ("ETF"), purportedly designed to reflect the performance of crude oil as measured by the price of West Texas Intermediate ("WTI") sweet, light crude oil futures contracts traded on the New York Mercantile Exchange (the "NYMEX").

¶ 2.  Shares of UCO trade on the New York Stock Exchange ("NYSE") under the ticker

---

[2] A Copy of Mr. Jin's PSLRA-required Certification is attached as Exhibit C to the McConville Decl., which sets forth all relevant transactions in UCO during the Class Period.  In addition, a chart reflecting the calculation of Mr. Jin's financial interest in the outcome of this litigation is attached as Exhibit D to the McConville Decl.

[3] Citations to "¶ __" are to paragraphs of the Class Action Complaint (the "Complaint") filed in the Action.  Unless otherwise defined, capitalized terms shall have the same meaning set forth in the Complaint.  The facts set forth in the Complaint are incorporated herein by reference.

("UCO"). *Id.* Because most retail investors are not equipped to buy and sell barrels of oil or authorized to trade oil futures contracts, they utilize ETFs such as UCO to make investments based on the price of oil and to gain investment exposure to fluctuations in spot oil prices. ¶¶ 3, 27. WTI is the main oil benchmark for North America as it is sourced from the United States, primarily from the Permian Basin. The oil comes mainly from Texas, then travels through refineries. The main delivery and price settlement point for WTI is Cushing, Oklahoma.

The Company had informed its investors that it would achieve its investment objective by seeking daily investment results, before fees and expenses, that correspond to two times the performance of its benchmark for a single day, and not for any other period. ¶ 4. UCO stated that it would not seek to achieve its stated objective over a period greater than a single day. *Id.* UCO has stated that it would seek to engage in a daily rebalancing of its position so that its exposure to its benchmark is consistent with its daily investment objective. *Id.*

However, the demand for oil suffered an abrupt decline in early 2020 due to the global COVID-19 pandemic. ¶ 37. As national, state, and local governments enforced mandatory lockdowns to lessen the spread of the disease, businesses closed, and consumer spending plummeted. *Id.* These extraordinary market conditions made UCO's investment objective and strategy unfeasible, and UCO failed to inform their investors of these issues. ¶ 5.

Aside from the COVID-19 pandemic, in early March, Saudi Arabia and Russia launched an oil price war. *Id.* The price war increased production and slashed export prices, causing excess oil supplies to begin to overflow, and the facilities available for storage in Cushing, Oklahoma approached capacity, ultimately causing a rare market dynamic known as "super contango," in which the futures prices for oil substantially exceed the spot price. *Id.* In response to the super contango, investors began to pour hundreds of millions of dollars into UCO in hopes

to "buy the dip" and be able to substantially profit when the market rebounded as the world's economies returned. *Id.* Because of the nature of UCO's investment strategy, these factors caused UCO to sustain heavy losses and undermined the Company's ability to meet its investment objective. *Id.*

But rather than inform its investors of the negative consequences UCO was facing, and the known impacts and risks, UCO chose to conduct a public offering. ¶¶ 6-7. On March 6, 2020, the beginning of the Class Period, UCO announced a public offering of up to $5,123,657,025 in UCO shares via a Form S-3 Registration Statement filed with the SEC. ¶ 7. On March 5, 2020, the day before Defendants filed this Registration Statement, UCO shares closed at approximately $11.29 each. *Id.* The Registration Statement was updated twice by Defendants via amendments throughout the month of March. ¶ 8.

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, prospects, and risks. ¶ 11. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (i) the concrete harms and acute risks to the Fund posed by the COVID-19 pandemic; (ii) the Russia/Saudi oil price war; (iii) the massive influx of investor capital into the Fund; (iv) the fact that the Fund was approaching position and accountability limits; (v) the effects of super contango; and (vi) insufficient WTI storage capacity. ¶ 9.

The truth began to emerge on April 3, 2020, when ProShares issued a press release announcing a 1:25 reverse share split for UCO and noted that the reverse split would take effect prior to the market opening on April 21, 2020. ¶ 64. UCO began to deteriorate as the extent of Defendants' fraud was revealed to investors and the market. ¶ 10. On April 28, 2020, one week after the reverse split, UCO shares closed at just $12.04 each, or around $0.4814 when compared

to the pre-reverse split valuation. ¶ 10. Ultimately, UCO suffered billions of dollars in losses and was forced to abandon its investment strategy. *Id.*

## II.    PROCEDURAL HISTORY

Pending before this Court is the above-captioned Action against Defendants. Plaintiff Luciano Di Scala ("Di Scala") commenced the Action on July 28, 2020. On that same day, counsel acting on Di Scala's behalf published a notice on *Globe Newswire* announcing that a securities class action had been initiated against the Defendants. *See* Press Release, McConville Decl., Ex. E.

## III.    ARGUMENT

### A.    Mr. Jin Should be Appointed as Lead Plaintiff

The PSLRA provides the procedure for selecting a lead plaintiff in class actions brought under the federal securities laws. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" — *i.e.*, the plaintiffs most capable of adequately representing the interests of the Class — is the class member or group of class members that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

5

The presumption "may be rebutted only upon proof by a purported member of the plaintiff class that the presumptively most adequate plaintiff—

> (aa) will not fairly and adequately protect the interest of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Mr. Jin satisfies the forgoing criteria and has complied with all of the PSLRA's requirements to be appointed lead plaintiff. Mr. Jin, to the best of his knowledge, possesses the largest financial interest in this litigation of *$18,208,257.26*, and meets the relevant requirements of Federal Rule of Civil Procedure 23. In addition, Mr. Jin is not aware of any unique defenses that Defendants could raise against him that would render him inadequate to represent the Class. Accordingly, Mr. Jin respectfully submits that he should be appointed as lead plaintiff. *See Rosi v. Alcaris Therapeutics, Inc.*, No. 19-CV-7118 (LTS)(JLC), 2019 WL 5778445, at *2-4 (S.D.N.Y. Nov. 6, 2019) (appointing movant with largest financial interest who also made *prima facie* showing of typicality and adequacy).

### 1.    Mr. Jin Timely Filed His Motion.

On July 28, 2020 pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), counsel for Di Scala published the Press Release on *Globe Newswire*—a widely circulated national business-oriented wire service—announcing the pendency of the Action advising members of the putative class that they had 60 days from the publication of notice to file a motion to be appointed as lead plaintiff, *i.e.*, on or before September 28, 2020. *See* Press Release, McConville Decl. Ex. E; *Salinger v. Sarepta Therapeutics, Inc.,* No. 19-CV-8122 (VSB), 2019 WL 6873807, at *4 (S.D.N.Y. Dec. 17, 2019) (filing a notice on *Globe Newswire* satisfied the PSLRA's notice requirement).

Mr. Jin timely filed his motion and accompanying sworn certification within the 60-day period following publication of the July 28, 2020 Press Release.  By making a timely motion in response to a PSLRA notice, Mr. Jin has satisfied the first PSLRA requirement to be appointed as lead plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(aa).

### 2.    Mr. Jin Has the Largest Financial Interest

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  At the time of this filing, Mr. Jin believes that he has the largest financial interest among Class members who filed timely applications for appointment as lead plaintiff and, accordingly, is presumed to be the "most adequate plaintiff." Mr. Jin has a financial interest of approximately ***$18,208,257.26*** in the outcome of this litigation.  *See* McConville Decl., Ex. B.  To the best of Mr. Jin's knowledge, there is no other applicant seeking Lead Plaintiff appointment asserting a larger financial interest in the litigation.  Consequently, Mr. Jin believes that he has the "largest financial interest in the relief sought by the Class."  Thus, Mr. Jin satisfies the second PSLRA requirement—the largest financial interest—to be appointed as lead plaintiff for the Class.

### 3.    Mr. Jin Satisfies the Relevant Requirements of Rule 23.

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or

7

defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a).

In making its determination that a lead plaintiff candidate satisfies the requirements of Rule 23, "a moving plaintiff [need make] only . . . a preliminary showing that the adequacy and typicality requirements have been met." *Stirling v. Ollie's Bargain Outlet Holdings, Inc.*, No. 19-CV-8647, 2019 WL 6619493, at *1 (S.D.N.Y. Dec. 5, 2019) (citation omitted). This determination "need not be as complete as would a similar determination for the purpose of class certification." *Sarepta Therapeutics*, 2019 WL 6873807, at *3 (citation omitted).

### a.       Mr. Jin's Claims Are Typical

The Rule 23(a) typicality requirement is satisfied when a lead plaintiff's claims arise from the same event, practice, or course of conduct that gives rise to other class members' claims, and lead plaintiff's claims are based on the same legal theory. *See In re Deutsche Bank AG Sec. Litig.*, 328 F.R.D. 71, 80 (S.D.N.Y. 2018). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Id.* (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 412 (S.D.N.Y. 2004) (noting a lead plaintiff's claims "need not be identical to the claims of the class to satisfy the typicality requirement").

Mr. Jin's claims are typical of the claims asserted by the proposed Class. Like all members of the Class, Mr. Jin alleges that Defendants' material misstatements and omissions and fraudulent scheme concerning UCO's business, prospects, and risks violated the federal

8

securities laws.  As applied, Mr. Jin, investing on Mr. Zhao's behalf and like all members of the Class, purchased UCO securities during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements, and was damaged thereby.  *See Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.,* No. 10-cv-01405 (SLT)(RER), 2011 WL 3511057, at *4 (E.D.N.Y. May 31, 2011) (typicality satisfied where movants purchased stock at artificially inflated prices "and suffered damages as a result"); *see also* Jin Decl. ¶ 2.  Because Mr. Jin has received a valid assignment claims from Mr. Zhao arising from these investments in UCO securities, Mr. Jin's interests and claims are "typical" of the interests and claims of the Class.  *See* Assignment; *see also* Jin Decl. ¶¶ 2, 5.

### b.      Mr. Jin Is an Adequate Representative.

In order for the Class' interests to be fairly and adequately represented, the movant must show that: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy."  *Hom v. Vale, S.A.*, No. 1:15-cv-9539-GHW, 2016 WL 880201, at *6 (S.D.N.Y. Mar. 7, 2016) (citation omitted).  Mr. Jin has demonstrated his adequacy by retaining competent and experienced counsel with the resources and expertise to efficiently prosecute this Action.  *See infra*, Section III.B.  Further, Mr. Jin's financial interest ensures that he has sufficient incentive to ensure vigorous advocacy.  *See* McConville Decl., Ex. D; *Lipetz v. Wachovia Corp.*, No. 08 Civ. 6171 (RJS), 2008 WL 4615895, at *3 (S.D.N.Y. Oct. 10, 2008) (noting investor's "substantial financial stake in the litigation" suggests that it would "vigorously" prosecute claims on behalf of the class).  Finally, Mr. Jin is not aware that any

9

conflict exists between his claims and those asserted on behalf of the Class. As such, Mr. Jin has satisfied the adequacy requirement.

Moreover, Mr. Jin is a sophisticated investor with approximately twenty years of experience investing in the securities markets, and a business owners of several companies, including E&E Co., Ltd. ("E&E"), a sourcing and manufacturing company. *See* Jin Decl. ¶¶ 3-5. E&E has annual sales of approximately $600 million and employs approximately 450 people, including an in-house legal team. *Id.* ¶ 3. Through Mr. Jin's role as CEO of E&E, Mr. Jin has extensive experience in both overseeing and directing counsel, including in litigation matters arising under various areas of law. *Id.* ¶ 4.[4] Finally, Mr. Jin has already taken measures to ensure the claims are vigorously and effectively prosecuted in the best interests of the Class, including negotiating a fair a reasonable fee agreement with his highly qualified proposed Lead Counsel. *Id.* ¶ 6-8.

Accordingly, Mr. Jin has more than demonstrated his willingness, resources, experience, and commitment to supervise Lead Counsel and obtain the best possible recovery for the Class.

### B.    Approving Mr. Jin's Choice of Counsel Is Appropriate

The PSLRA vests authority in the lead plaintiffs to select and retain counsel, subject only to approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp.*, 264 F.3d 201, 274 (3d Cir. 2001). Thus, the Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

---

[4] *Cf. In re HEXO Corp. Sec. Litig.*, No. 19 CIV. 10965 (NRB), 2020 WL 5503634, at *1 (S.D.N.Y. Sept. 11, 2020) (Buchwald, J.) (refusing to reconsider lead plaintiff motion where movant had failed to provide "threshold amount of information regarding [their] background and sophistication," including information necessary to determine whether movant would "meaningfully oversee the litigation").

Here, Mr. Jin has selected Labaton Sucharow to pursue this litigation on his behalf and has retained the firm as the Class' Lead Counsel in the event he is appointed as Lead Plaintiff. Labaton Sucharow has excelled as lead counsel in numerous landmark securities class actions on behalf of defrauded investors. For example, Labaton Sucharow served as lead counsel in *In re American International Group, Inc. Securities Litigation,* No. 04-cv-8141 (S.D.N.Y.), in which it achieved a recovery totaling more than $1 billion for injured investors, and secured a $294.9 million recovery in *In re Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litigation,* No. 08-md-1963 (S.D.N.Y.), in which the Firm served as co-lead counsel. Labaton Sucharow also served as co-lead counsel in *In re Satyam Computer Services Ltd. Securities Litigation,* No. 09-md-2027 (S.D.N.Y.), through which it helped recover from the company and its auditors a total of $150.5 million for class members. Labaton Sucharow presently serves as lead counsel in several significant investor class actions. *See* Labaton Sucharow Firm Resume, McConville Decl., Ex. F.

Accordingly, the Court may be assured that, by granting Mr. Jin's motion, the Class will receive the highest caliber of legal representation.

## IV.    CONCLUSION

For the foregoing reasons, Mr. Jin respectfully requests the Court grant his Motion and enter an Order: (i) appointing Mr. Jin as lead plaintiff, (ii) approving his selection of Labaton Sucharow as Lead Counsel for the Class, and (iii) granting such other relief as the Court may deem just and proper.

Dated: September 28, 2020                           Respectfully Submitted,

                                                    */s/ Francis P. McConville*

                                                    **LABATON SUCHAROW LLP**
                                                    Christopher J. Keller

Eric J. Belfi
Francis P. McConville
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
fmcconville@labaton.com

*Counsel for Proposed Lead Plaintiff
Edmund Jin and Proposed Lead Counsel for
the Class*

12