**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUCIANO DI SCALA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PROSHARES ULTRA BLOOMBERG CRUDE OIL, PROSHARE CAPITAL MANAGEMENT LLC, PROSHARES TRUST II, MICHAEL L. SAPIR, TIMOTHY N. COAKLEY, and TODD B. JOHNSON,<br><br>Defendants. | CASE No.: 1:20-cv-05865-NRB<br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PINCHAS DAN DANINO TO: (1) APPOINT LEAD PLAINTIFF; AND (2) APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL<br><br><u>CLASS ACTION</u> |

Plaintiff Pinchas Dan Danino ("Movant") respectfully submits this memorandum of law in support of his motion for an Order, pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a)     appointing Movant as Lead Plaintiff for the class of all investors who purchased or otherwise acquired ProShares Ultra Bloomberg Crude Oil ("UCO") securities from March 6, 2020 and April 27, 2020, both dates inclusive (the "Class Period"); and

1

(b)      approving Movant's selection of The Rosen Law Firm, P.A. ("Rosen") as Lead Counsel for the Class.

## INTRODUCTION AND BACKGROUND

On July 28, 2020, this case was filed against ProShares Ultra Bloomberg Crude Oil, ProShares Trust II, ProShare Capital Management LLC ("ProShares"), Michael L. Sapir, Timothy N. Coakley, and Todd B. Johnson for violations under the Exchange Act. That same day, an early notice pursuant to the PSLRA advising class members of, inter alia, the allegations and claims in the complaint, the Class Period, and advising class members of their option to seek appointment as Lead Plaintiff was issued. *See* Ex. 1 hereto.

UCO is an exchange traded fund ("ETF"), which is purportedly designed to reflect the performance of crude oil as measured by the price of West Texas Intermediate ("WTI") sweet, light crude oil futures contracts traded on the New York Mercantile Exchange. Because retail investors are generally not equipped to buy and sell barrels of oil or authorized to trade oil futures, ETFs like UCO provide one of the primary means by which such investors can gain exposure to fluctuations in oil prices. WTI is the main oil benchmark for North America as it is sourced from the United States, primarily from the Permian Basin. The oil comes mainly from Texas, then travels through refineries. The main delivery and price settlement point for WTI is Cushing, Oklahoma.

The complaint alleges that during the Class Period Defendants' statements were materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, UCO could not pursue the claimed passive investment strategy or objective portrayed in the Registration Statement because the Fund was facing a host of interrelated crises that had undermined its ability to pursue its stated investment objective and strategy, including: (1) the extraordinary market volatility caused by

decreased demand for oil from the coronavirus pandemic and increased oil supply and diminished oil prices caused by the Russia/Saudi oil price war; (2) a massive influx of investor capital into the Fund, totaling hundreds of millions of dollars, in a matter of days, which increased Fund inefficiencies, heightened illiquidity in the WTI futures contract markets in which the Fund invested, and caused the Fund to approach positional and regulatory limits (adverse trends exacerbated by the Offering itself); and (3) a sharp divergence between spot and future prices in the WTI oil markets, leading to a super contango market dynamic as oil storage space in Cushing, Oklahoma dwindled and was insufficient to account for the excess supply expected to be delivered pursuant to the WTI May 2020 futures contract. As a result, UCO could not continue to pursue the passive investment strategy represented in the Registration Statement, causing its results to significantly deviate from its purported benchmark.

On March 6, 2020, UCO filed a Registration Statement on Form S-3 with the U.S. Securities and Exchange Commission ("SEC"). Through this Registration Statement UCO set a "Proposed Maximum Aggregate Offering Price" of $5,123,657,025. Despite the severity of the adverse market trends impacting UCO, which caused UCO to suffer hundreds of millions of dollars in losses and threatened UCO's very existence, the Registration Statement contained substantially the same generic boilerplate risk disclosures that UCO had provided in past registration statements. The Registration Statement failed to inform investors of the developing extreme market conditions in the WTI oil market. The Registration Statement also failed to mention the effects of the developing super contango, the specific impacts of ongoing market volatility on UCO, or the fact that UCO was approaching position limits and liquidity constraints because of the massive influx of investor capital into UCO (an adverse trend accelerated by the Offering itself). The Registration Statement also failed to provide any specifics regarding the effects of the COVID-19 pandemic.

3

At the time of the Offering, UCO had already been severely impacted by increased volatility in oil and oil-related markets and reduced oil demand as a result of the COVID-19 pandemic, which had compromised UCO's ability to achieve its investment strategy and objective and caused UCO to suffer hundreds of millions of dollars in losses. Moreover, the Registration Statement's discussion of general factors that "could" impact oil supply and demand omitted to discuss the major impacts that UCO was already suffering.

The March 6, 2020 Registration Statement also misrepresented UCO's investment objective and principal investment strategies. Rather than disclose that UCO already knew it was going to change its investment objective and strategies, the Registration Statement merely contained generic boilerplate disclosures. The Registration Statement represented that UCO would achieve its investment objective by seeking daily investment results, before fees and expenses, that correspond to two times (2x) the daily performance of the Bloomberg WTI Crude Oil SubindexSM.

The March 6, 2020 Registration Statement further claimed that UCO was "not actively managed by traditional methods (e.g., by effecting changes in the composition of a portfolio on the basis of judgements [sic] relating to economic, financial and market conditions with a view toward obtaining positive results under all market conditions)." Yet UCO knew it could not pursue the claimed passive investment strategy or objective portrayed in the March 6, 2020 Registration Statement because of the host of interrelated crises that had undermined UCO's ability to invest pursuant to the stated objective.

On March 25, 2020, UCO filed an amended Registration Statement on Form S-3/A with the SEC which contained similar misstatements and omissions as those alleged in UCO's March 6, 2020 Registration Statement. In this March 25, 2020 Registration Statement, UCO again set a "Proposed Maximum Aggregate Offering Price" of $5,123,657,025. In its March 25, 2020

4

amended Registration Statement, UCO acknowledged the existence of the COVID-19 pandemic, but only in general terms. Furthermore, the March 25, 2020 amended Registration Statement still failed to acknowledge the presence of contango on the oil market, the existence of the Russia/Saudi oil price war, or insufficient WTI storage capacity at Cushing, Oklahoma.

On March 30, 2020, UCO filed an amended Registration Statement on Form S-3/A with the SEC which contained similar misstatements and omissions as those alleged in UCO's March 6 and March 25, 2020 Registration Statements. In addition, the March 30, 2020 Form S-3/A listed the "Proposed Maximum Aggregate Offering Price" for UCO as $4,555,433,103.

Then, on April 3, 2020, ProShares issued a press release that announced a 1:25 reverse share split for UCO and noted that the reverse split would take effect prior to the market opening on April 21, 2020. On April 22, 2020, ProShares filed on Form 424B3 with the SEC a Prospectus Supplement. This filing stated that "In light of recent extraordinary conditions and volatility in the markets for crude oil and related Financial Instruments, each Oil Fund may utilize other investment strategies and Financial Instruments[.]"

On April 24, 2020, ProShares Trust II filed a press release on Form 8-K with the SEC which stated, in relevant part: "In light of recent extraordinary conditions and volatility in crude oil markets and related Financial Instruments, each Oil Fund will seek to transition approximately 1/3 of its current portfolio from exposure to July 2020 WTI crude oil futures contracts into longer-dated exposure, specifically exposure to September 2020 WTI crude oil futures contracts[,]" and "[a]s a result, the performance of each Oil Fund should not be expected to correspond to two times (2x), or two times the inverse (-2x), as applicable, of the daily performance of its benchmark, and each Fund's performance could differ significantly from its stated investment objective."

On April 27, 2020 ProShares Trust II filed a press release on Form 8-K with the SEC which stated, among other things, that "[t]he performance of each Oil Fund therefore will very likely differ in amount, and possibly even direction, from the performance of the spot price of crude oil[,]" and that "[r]ecent global developments affecting crude oil markets and the markets for crude oil futures contracts have dramatically increased volatility and increased the likelihood of investors suffering significant or total loss from crude oil-related investments, including an investment in an Oil Fund."

As a result of these sudden and dramatic changes, UCO's investment strategy was fundamentally different from the strategy represented to investors in the Registration Statement. UCO's stated passive strategy was not feasible during the Class Period because of the undisclosed adverse trends that UCO was experiencing, as detailed herein. As a result of Defendants' wrongful acts and omissions, Plaintiff and the Class purchased UCO securities at artificially inflated prices, suffering significant losses, and were damaged thereby.

**ARGUMENT**

## I.    MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" to serve as lead plaintiff is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice…;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, Movant satisfies all three of these criteria, and thus are entitled to the presumption of being the "most adequate plaintiff" for the Class.

### A. Movant Is Willing to Serve as Class Representative

Mr. Danino is a sophisticated investor. He holds bachelor's degrees in Law and in Education, a master's degree in Talmud, and is a lawyer by profession. *See* Ex. 3 hereto, Danino Declaration (the "Danino Decl."). He has timely filed herewith a PSLRA certification attesting that he is willing to serve as representative of the class and remains willing to provide testimony at deposition and trial, if necessary. *See* Ex. 2 hereto. Mr. Danino also reiterated his commitment and willingness to serve as Lead Plaintiff in his Declaration. *See* Danino Decl. ("I am committed to prosecuting this action to maximize the recovery for all UCO investors."). Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the Class.

### B. Movant Has the Largest Financial Interest in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). "While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara Trust v. Molex*, 229 F.R.D. 577, 579 (N.D. Ill. 2005). Of the *Lax/Olsten*-styled[1] factors in determining the largest financial interest, the financial loss is the most significant

---

[1] *Lax v. Merch. Acceptance Corp.*, 1997 WL 461036 *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998).

factor. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008). Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period." *In re Bally Total Fitness*, *Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005).

Movant lost approximately $1,975,737.50 in connection with purchases of UCO securities. *See* Ex. 4 hereto. Movant is not aware of any other movant that has suffered greater losses in UCO securities during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

**C. Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure**

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification – a *prima facie* showing that Movant will satisfy the requirements of Rule 23 is sufficient. *Fuwei Films*, 247 F.R.D. at 439 (only a *prima facie* showing is required). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

1.      **Movant's Claims are Typical**

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiff's claims are based on the same legal theory. *See In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id*.

Here, Movant's claims are typical of the claims asserted by the Class. Movant, like all members of the Class, allege that Defendants violated the Exchange Act by issuing false and misleading and failing to disclose material statements about the Company's business. Movant's interests are closely aligned with the other Class members' and Movant's interests are, therefore, typical of the other members of the Class.

2.      **Movant Is Adequate**

The adequacy of representation of Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between a potential representative's claim and those asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d. 201, 265 (3d Cir. 2001).

Here, Movant has communicated with competent, experienced counsel concerning this case, and made this motion to be appointed as Lead Plaintiff. Movant is not aware that any conflict exists between his claims and those asserted on behalf of the Class. Movant also sustained substantial financial losses from investments in UCO securities and is therefore, extremely motivated to pursue claims in this action.

### D.  Movant Is Presumptively the Most Adequate Plaintiff

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiff:

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, as noted above, Movant is a sophisticated investor who has attested to this commitment to prosecute this action. *See* Danino Decl. Movant has researched and retained competent and experienced counsel concerning this case, and made this motion to be appointed as Lead Plaintiff. *See* Danino Decl. Movant is not aware that any conflict exists between his claims and those asserted on behalf of the Class.

The presumption that Movant is the most adequate Lead Plaintiff is not, therefore subject to rebuttal. Accordingly, Movant has suffered substantial financial losses and has the largest financial interest in this case of any timely lead plaintiff. The ability of Movant to represent the Class fairly and adequately is discussed above. Movant is not aware of any unique defenses Defendants could raise against him that would render Movant inadequate to represent the Class.

## II.  MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected Rosen as Lead Counsel. The firm has been actively researching Movant's and the Class's claims, including reviewing publicly available financial and other documents while gathering information in support of the claims against Defendants. Furthermore, the firm has an extensive history bringing significant recoveries to investors and is experienced in the area of securities litigation and class actions, having been appointed as lead counsel in securities class actions in this District and in other courts throughout the nation. *See* Ex. 5 hereto. The firm has prosecuted numerous securities fraud class actions and other complex litigation and obtained substantial recoveries on behalf of investors.

As a result of the firm's experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Movant's selection of Lead Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests the Court issue an Order: (1) appointing Movant as Lead Plaintiff of the Class; (2) approving Movant's selection of Rosen as Lead Counsel; and (3) granting such other relief as the Court may deem to be just and proper.

Dated: September 28, 2020                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

11

*[Proposed] Lead Counsel for Lead Plaintiff and
Class*

12

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2020, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Phillip Kim