## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUCIANO DI SCALA, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>PROSHARES ULTRA BLOOMBERG CRUDE OIL, PROSHARE CAPITAL MANAGEMENT LLC, PROSHARES TRUST II, MICHAEL L. SAPIR, TIMOTHY N. COAKLEY, and TODD B. JOHNSON,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) No. 1: 20-cv-05865-NRB<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF ADVANCED WEALTH MANAGEMENT, LLC'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPOINTMENT OF LEAD COUNSEL**

**INTRODUCTION**

Before this Court is a securities class action brought on behalf of purchasers of ProShares Ultra Bloomberg Crude Oil ("UCO") securities between March 6, 2020 and April 27, 2020, inclusive (the "Class Period"), which alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §§ 78(j)(b) and 78(t)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

Advanced Wealth Management, LLC ("AWM") hereby moves this Court for an order: (i) appointing AWM as Lead Plaintiff; and (ii) approving AWM's selection of Block & Leviton LLP to serve as Lead Counsel.

This motion is made on the grounds that AWM is the most adequate plaintiff as defined by the PSLRA because AWM believes it possesses the largest financial interest in the relief sought by the class, having lost approximately $1,870,372.00 on its purchases of UCO securities. AWM's claims are also typical of the claims of the putative class, and AWM will fairly and adequately represent the interests of the class. AWM is, therefore, the presumptive Lead Plaintiff.

Accordingly, the Court should appoint AWM as Lead Plaintiff, and approve Block & Leviton as Lead Counsel.

**FACTUAL BACKGROUND[1]**

UCO is an exchange-traded fund ("ETF") that was purportedly designed to reflect the performance of crude oil as measured by the price of West Texas Intermediate ("WTI") sweet, light crude oil futures contracts traded on the New York Mercantile Exchange. ¶ 2. WTI is the main oil benchmark for North America as it is sourced from the United States, primarily from the

---

[1] The facts are taken from the Complaint filed in this matter (ECF No. 1). References to "¶" refer to that Complaint.

Permian Basin. ¶ 3. The oil comes mainly from Texas, then travels through refineries. *Id.* The main delivery and price settlement point for WTI is Cushing, Oklahoma. *Id.*

Since retail investors are generally not equipped to buy and sell barrels of oil or authorized to trade oil futures, ETFs like UCO provide one of the primary means by which such investors can gain exposure to fluctuations in oil prices. ¶ 3. Defendants stated that they would achieve the investment objective for UCO by seeking daily investment results, before fees and expenses, that correspond to two times the performance of its benchmark for a single day, and not for any other period. ¶ 4. UCO stated that it would not seek to achieve its stated objective over a period greater than a single day, and that it would seek to engage in a daily rebalancing to its position so that its exposure to its benchmark is consistent with its daily investment objective. *Id.*

Unbeknownst to investors, however, extraordinary market conditions in early 2020 made UCO's purported investment objective and strategy unfeasible. ¶ 5. First, oil demand fell precipitously as governments imposed lockdowns and businesses halted operations in response to the COVID-19 pandemic. *Id.* Second, in early March 2020, Saudi Arabia and Russia launched an oil price war, increasing production and slashing export prices in a bid to increase the global market share of their domestic petrochemical enterprises. *Id.* Third, as excess oil supply increased and oil prices waned, the facilities available for storage in Cushing, Oklahoma approached capacity, ultimately causing a rare market dynamic known as "super contango," in which the futures prices for oil substantially exceed the spot price. *Id.* Because of the nature of UCO's investment strategy, these converging factors caused UCO to suffer exceptional losses and undermined UCO's ability to meet its ostensible investment objective. *Id.*

Defendants, as the creators, issuers, and operators of UCO, possessed inside knowledge about the negative consequences to UCO as a result of these converging factors. ¶ 6. Rather than

disclose these known impacts and risks to UCO as a result of these exceptional threats, Defendants instead conducted a massive offering of UCO shares, ultimately selling billions of dollars' worth of UCO shares to the market. *Id.* This was achieved via a March 6, 2020 Form S-3 Registration Statement, which was amended twice on March 25, 2020 and March 30, 2020. ¶¶ 7-8. These materials failed to disclose and/or misrepresented the concrete harms and acute risks to UCO posed by the COVID-19 pandemic, Saudi/Russia price war, the massive influx of investor capital into the Fund, the fact that the Fund was approaching position and accountability limits, the effects of super contango, and insufficient WTI storage capacity. ¶ 9.

UCO quickly deteriorated. On April 21, 2020, UCO had a 1:25 reverse split. ¶ 7, n.1. Ultimately, UCO suffered billions of dollars in losses and was forced to abandon its investment strategy. ¶ 10. UCO transitioned from the passive ETF to an actively-managed fund struggling to avoid a total implosion. *Id.* In April and May 2020, Defendants belatedly acknowledged the threats and adverse impacts that UCO had been experiencing at the time of the March offering, but which they had failed to disclose to investors in a timely manner. *Id.* As a result of Defendants' material misrepresentations and omissions, UCO investors suffered billions of dollars in losses. ¶ 12.

## ARGUMENT

### I.      The Court Should Appoint AWM as Lead Plaintiff.

#### A.      The Procedure Required by the PSLRA

The PSLRA established a procedure governing the appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1) & (a)(3)(B)(i).

*First*, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Within 60 days after publication of the notice (*i.e.*,

today, September 28, 2020), any person who is a member of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4(a)(3)(A) & (B).

*Second*, the PSLRA provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the members of the class the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that (aa) has either filed the complaint or made a motion in response to a notice . . . (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### B.      AWM Has Timely Moved for Lead Plaintiff Appointment

Pursuant to the provisions of the PSLRA and within the required time frame after publication of the notice, AWM timely moves this Court to be appointed as Lead Plaintiff on behalf of all members of the class. AWM has signed a certification pursuant to the PLRSA. *See* Block Decl.,[2] Ex. B. AWM has selected and retained qualified counsel to represent it and the proposed class. *See* Block Decl. Ex. E.

### C.      AWM Has the Largest Financial Interest in the Relief Sought by the Class

During the Class Period, as evidenced by, among other things, AWM's accompanying signed certification and loss chart, AWM incurred a substantial loss of approximately $1,870,372.00 on its class period transactions in UCO securities. *See* Block Decl. Exs. B, C. At

---

[2] References to the "Block Decl." are to the Declaration of Jeffrey C. Block, filed contemporaneously herewith.

the time of this filing, AWM believes that it possesses the largest financial interest of any movant seeking lead plaintiff status.

### D.      AWM Otherwise Satisfies Rule 23

In addition to having the largest financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u4(a)(3)(B)(iii)(I)(cc). "At the lead plaintiff stage of the litigation, in contrast to the class certification stage, 'a proposed lead plaintiff need only make a "preliminary showing" that it will satisfy the typicality and adequacy requirements of Rule 23.'" *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173 (S.D.N.Y. 2010) (citation omitted). "'Typicality "requires that the claims of the class representatives be typical of those of the class and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Id*. at 173-74 (citation omitted); *see also* Fed. R. Civ. P. 23(a)(3). "'The adequacy requirement is satisfied where the proposed Lead Plaintiff does not have interests that are antagonistic to the class that he seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class....'" *Sgalambo*, 268 F.R.D. at 174 (citation omitted); *see also* Fed. R. Civ. P. 23(a)(4).

Here, AWM's claims are typical because, like all members of the class, AWM purchased or otherwise acquired AWM securities during the Class Period at prices artificially inflated by Defendants' wrongful conduct, and suffered damages as a result thereof. AWM's claims therefore arise from the same course of events as all class members and will require similar (if not identical) legal arguments to prove Defendants' liability.

AWM is also an adequate representative for the proposed class. AWM's substantial financial interest in the outcome of the action demonstrates that its interests are aligned with those of the class. Furthermore, AWM has selected highly experienced counsel committed to zealously

and efficiently prosecuting these actions to a successful conclusion. *See* Block Decl., Ex. E. Thus, AWM satisfies the adequacy requirements of Rule 23(a)(4).

As set forth in the Declaration of Antonio P. Gomes, AWM is Florida Registered Investment Advisory. *See* Block Decl., Ex. D at ¶ 7. AWM had full, complete, and unfettered authority to make the purchases and sales of UCO securities at issue in this case. *Id*. AWM controls and manages the funds under its control and acts as attorney-in-fact for them. *Id.* Investment advisors like AWM are "not only permissible lead plaintiffs, but desirable ones as well." *See, e.g.*, *Miller v. Dyadic Int'l, Inc.*, No. 07-cv-80948, 2008 WL 2465286, at *9 (S.D. Fla. Apr. 18, 2008) (citing numerous cases in support of this point). *See also Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 255 (S.D.N.Y. 2003).

Because AWM is the presumptive "most adequate plaintiff" under the PSLRA, 15 U.S.C. §78u-4(a)(3)(B)(iii)(I), and no competing movant can rebut that presumption, the Court should appoint AWM as Lead Plaintiff.

## II. The Court Should Appoint AWM's Choice of Counsel

Under the PSLRA, the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent. 15 U.S.C. § 78u-4(a)(3)(B)(v). AWM has selected Block & Leviton, a firm with substantial experience in the prosecution of shareholder and securities class actions to serve as lead counsel. Block Decl. Ex. E. As recently noted by one district court:

> While I recognize that each counsel is well qualified, I am particularly persuaded by [Block & Leviton's] experience in large securities class actions, such as its representation of plaintiffs in *In re BP Securities Litigation*, (S.D. Tex.), *In re Google Inc. Class C Shareholder Litig.* (Del. Ch. Ct.), and *In re Volkswagen "Clean Diesel" Marketing, Sales and Products Liability Litigation (N.D. Cal.). I find the experience garnered from such representations will benefit the shareholder in this suit.

7

*Thieffry v. Synchronoss Tech., Inc.*, No. 3:17-cv-07173-FLW-LHG (D.N.J. 2018) (ECF No. 21).

Accordingly, the Court should approve AWM's selection of Block & Leviton as Lead Counsel.

**CONCLUSION**

For the foregoing reasons, AWM respectfully requests that the Court: (i) appoint Advanced Wealth Management, LLC as Lead Plaintiff; (ii) approve AWM's selection of Block & Leviton LLP as Lead Counsel; and (iii) grant such other relief as the Court may deem just and proper.

Dated: September 28, 2020                     Respectfully submitted,

*/s/ Jeffrey C. Block*
Jeffrey C. Block
Stephen J. Teti
**BLOCK & LEVITON LLP**
260 Franklin St., Suite 1860
Boston, MA 02110
(617) 398-5600 phone
(617) 507-6020 fax
jeff@blockleviton.com
steti@blockleviton.com

*Attorneys for Advanced Wealth Management,*
*LLC and Proposed Lead Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

/s/ Jeffrey C. Block
Jeffrey C. Block