UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUCIANO DI SCALA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PROSHARES ULTRA BLOOMBERG CRUDE OIL, PROSHARE CAPITAL MANAGEMENT LLC, PROSHARES TRUST II, MICHAEL L. SAPIR, TIMOTHY N. COAKLEY, and TODD B. JOHNSON,<br><br>Defendants. | Case No. 1:20-cv-05865-NRB |

MEMORANDUM OF LAW
IN SUPPORT OF MOTION OF THE UCO INVESTOR GROUP
FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .....1

STATEMENT OF FACTS .....2

ARGUMENT .....5

A. THE UCO INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF .....5

1. The UCO Investor Group Is Willing to Serve as Class Representative .....6

2. The UCO Investor Group Has the "Largest Financial Interest" .....6

3. The UCO Investor Group Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure .....7

4. The UCO Investor Group Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses .....11

B. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED .....11

CONCLUSION .....12

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Barnet v. Elan Corp., PLC*,
   236 F.R.D. 158 (S.D.N.Y. 2005) ....................................................................................... 10

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
   141 F.R.D. 229 (S.D.N.Y. 1992) ......................................................................................... 8

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
   2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017) ................................................................. 9, 10

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ............................................................................................. 7, 10

*Chahal v. Credit Suisse Grp. AG*,
   18-CV-2268 *et al.*, 2018 U.S. Dist. LEXIS 104185 (S.D.N.Y. June 21, 2018) ...................... 7

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06-CV-1825 (NGG) (RER), 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y.
   Mar. 2, 2007) ....................................................................................................................... 7, 12

*Dookeran v. Xunlei Ltd.*,
   No. 18-cv-467 (RJS), 2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018) ...................................... 9

*In re Drexel Burnham Lambert Grp., Inc.*,
   960 F.2d 285 (2d Cir. 1992) ................................................................................................... 8

*Fischler v. AMSouth Bancorporation*,
   No. 96-1567-Civ-T-17A, 1997 WL 118429 (M.D. Fla. Feb. 6, 1997) .................................... 8

*Foley v. Transocean Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011) ............................................................................................ 9

*Gluck v. CellStar Corp.*,
   976 F. Supp. 542 (N.D. Tex. 1997) ........................................................................................ 8

*Greebel v. FTP Software*,
   939 F. Supp. 57 (D. Mass. 1996) ........................................................................................... 8

*Janbay v. Canadian Solar, Inc.*,
   272 F.R.D. 113 (S.D.N.Y. 2010) ............................................................................................ 8

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
   311 F.R.D. 373 (S.D.N.Y. 2015) .......................................................................................... 11

*La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
   2012 U.S. Dist. LEXIS 89192 (D. Vt. Apr. 27, 2012) ............................................................. 10

*Lax v. First Merchants Acceptance Corp.*,
   No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997) ....................................................... 6

*In re Molson Coors Brewing Co. Sec. Litig.*,
   233 F.R.D. 147 (D. Del. 2005) ............................................................................................... 11

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
   17-CV-06130 (LTS)(SN), 2017 U.S. Dist. LEXIS 187238 (S.D.N.Y. Nov. 13,
   2017) ........................................................................................................................................ 7

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) ..................................................................................... 7, 8

*In re Orion Sec. Litig.*,
   No. 08 Civ. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 7, 2008) ..................................... 8

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) ............................................................................................... 8

*Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) ............................................................................................. 7

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008) ................................................................................... 11

*Weltz v. Lee*,
   199 F.R.D. 129 (S.D.N.Y. 2001) ............................................................................................. 9

*West Palm Beach Police Pension Fund v. DFC Global Corp.*,
   2014 U.S. Dist. LEXIS 49595 (E.D. Pa. Apr. 9, 2014) ......................................................... 10

**Statutes**

15 U.S.C. § 78u-4(a)(3) ................................................................................................... passim

Private Securities Litigation Reform Act of 1995 .............................................................. passim

Securities Exchange Act of 1934 ............................................................................................ 1, 5

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................. passim

iv

Movants Sergi Lucas, Michael Zarabi, Kambiz Zarabi, and Evgeny Karelin (collectively, the "UCO Investor Group") respectfully submit this Memorandum of Law in support of their motion pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for an Order: (1) appointing the UCO Investor Group as Lead Plaintiff on behalf of a class consisting of all persons other than the above-captioned defendants who purchased or otherwise acquired ProShares Ultra Bloomberg Crude Oil ("UCO" or the "Company") securities between March 6, 2020 and April 27, 2020, both dates inclusive (the "Class Period"); and (2) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant who possesses the largest financial interest in the outcome of the action and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The UCO Investor Group, with losses of approximately $518,897 in connection with its purchases of UCO securities during the Class Period, believes that it has the largest financial interest in the relief sought in the above-captioned action ("Action"). The UCO Investor Group further satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure as its members are adequate representatives with claims typical of the other Class members. Accordingly, the UCO Investor Group respectfully submits that it should be appointed Lead Plaintiff.

**STATEMENT OF FACTS**

As alleged in the Complaint in the Action (Dkt. No. 1) (the "Complaint"), UCO is an exchange traded fund ("ETF"), which as discussed below, is purportedly designed to reflect the performance of crude oil as measured by the price of West Texas Intermediate ("WTI") sweet, light crude oil futures contracts traded on the New York Mercantile Exchange (the "NYMEX"). Complaint ¶ 2.  Shares of UCO trade on the NYSEArca stock exchange under the ticker ("UCO"). *Id.*

Because retail investors are generally not equipped to buy and sell barrels of oil or authorized to trade oil futures, ETFs like UCO provide one of the primary means by which such investors can gain exposure to fluctuations in oil prices. *Id.* ¶ 3.  WTI is the main oil benchmark for North America as it is sourced from the United States, primarily from the Permian Basin. *Id.* The oil comes mainly from Texas, then travels through refineries. *Id.*  The main delivery and price settlement point for WTI is Cushing, Oklahoma. *Id.*

UCO stated that it would achieve its investment objective by seeking daily investment results, before fees and expenses, that correspond to two times the performance of its benchmark for a single day, and not for any other period. *Id.* ¶ 4.  UCO stated that it would not seek to achieve its stated objective over a period greater than a single day. *Id.*  UCO has stated that it would seek to engage in a daily rebalancing to its position so that its exposure to its benchmark is consistent with its daily investment objective. *Id.*

However, unbeknownst to investors, extraordinary market conditions in early 2020 made UCO's purported investment objective and strategy unfeasible. *Id.* ¶ 5.  Oil demand fell precipitously as governments imposed lockdowns and businesses halted operations in response to the COVID-19 pandemic. *Id.*  Moreover, in early March 2020, Saudi Arabia and Russia launched

an oil price war, increasing production and slashing export prices in a bid to increase the global market share of their domestic petrochemical enterprises.  *Id.*  As excess oil supply increased and oil prices waned, the facilities available for storage in Cushing, Oklahoma approached capacity, ultimately causing a rare market dynamic known as "super contango," in which the futures prices for oil substantially exceed the spot price.  *Id.*  At the same time, retail investors began pouring hundreds of millions of dollars into UCO in an attempt to "buy the dip," believing (correctly) that the price of oil would rebound as economies exited lockdown periods and the Russia/Saudi oil price war ended.  *Id.*  Because of the nature of UCO's investment strategy, these converging factors caused UCO to suffer exceptional losses and undermined UCO's ability to meet its ostensible investment objective.  *Id.*

Defendants, as the creators, issuers, and operations of UCO, possessed inside knowledge about the negative consequences to UCO as a result of these converging factors.  *Id.* ¶ 6.  However, rather than disclose the known impacts and risks to UCO as a result of these exceptional threats, Defendants instead conducted a massive offering of UCO shares, ultimately selling billions of dollars' worth of UCO shares to the market."  *Id.*

On March 6, 2020, Defendants announced a public offering of up to $5,123,657,025 in UCO shares via a Form S-3 Registration Statement filed with the SEC.  *Id.* ¶ 7.  On March 5, 2020, the day before Defendants filed this Registration Statement, UCO shares closed at approximately $11.29 each.[1]  *Id.*

---

[1] As detailed in the Complaint, on April 21, 2020, UCO had a 1:25 reverse split.  *Id.*  Accordingly, using post-reverse split valuation, a shareholder who purchased a share on March 5, 2020 at $11.29 had an effective cost basis of $282.25 for that share ($11.29 x 25 = $282.25).  *Id.*

3

As the month of March progressed, Defendants twice updated this Registration Statement – via amendments on March 25, 2020 and March 30, 2020. *Id.* ¶ 8.

The Registration Statement and its amendments failed to disclose and/or misrepresented the concrete harms and acute risks to the Fund posed by the COVID-19 pandemic, the Russia/Saudi oil price war, the massive influx of investor capital into the Fund, the fact that the Fund was approaching position and accountability limits, the effects of super contango, and insufficient WTI storage capacity. *Id.* ¶ 9.

UCO quickly deteriorated, as a result of the nature and extent of Defendants' fraud being revealed to investors and the market. *Id.* ¶ 10. On April 28, 2020, one week after the reverse split, UCO shares closed at just $12.04 each, or around $0.4814 when compared to the prereverse split valuation. *Id.* Ultimately, UCO suffered billions of dollars in losses and was forced to abandon its investment strategy. *Id.* Through a series of investment overhauls, UCO was forced to transform from the passive ETF an actively-managed fund struggling to avoid a total implosion. *Id.* In April and May 2020, Defendants belatedly acknowledged the threats and adverse impacts that UCO had been experiencing at the time of the March offering, but which they had failed to disclose to investors in a timely manner. *Id.*

Defendants are liable for: (i) making false and misleading statements; and (ii) failing to disclose adverse facts known to them about UCO. *Id.* ¶ 11. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of UCO securities was a success, as it: (i) deceived the investing public regarding UCO's business, prospects, and risks; (ii) artificially inflated the prices of UCO securities; and (iii) caused Plaintiff and other members of the Class to purchase UCO securities at artificially inflated prices. *Id.*

4

As a result of Defendants' material misrepresentations and omissions during the Class Period, Plaintiff and members of the Class (defined below) suffered billions of dollars in losses. *Id.* ¶ 12.

## ARGUMENT

A.     **THE UCO INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF**

The UCO Investor Group should be appointed Lead Plaintiff because it has the largest financial interest in the Action and otherwise meets the requirements of Rule 23. Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of lead plaintiff in class actions brought under the Exchange Act. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

5

As set forth below, the UCO Investor Group satisfies all three of these criteria and thus is entitled to the presumption that it is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1. The UCO Investor Group Is Willing to Serve as Class Representative

On July 28, 2020, counsel for plaintiff in the Action, caused a notice to be published over *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "Notice"), which announced the pendency of this Action and advised investors in UCO securities that they had until September 28, 2020—*i.e.*, 60 days—to file a motion to be appointed as Lead Plaintiff. *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Ex. A.

The UCO Investor Group has filed the instant motion pursuant to the Notice and its members have submitted sworn Certifications attesting that they are willing to serve as representatives for the Class and to provide testimony at deposition and trial, if necessary. *See* Lieberman Decl., Ex. B. Accordingly, the UCO Investor Group satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2. The UCO Investor Group Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of its members' knowledge, the UCO Investor Group has the largest financial interest of any UCO investor or investor group seeking to serve as Lead Plaintiff. For claims arising under federal securities laws, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill.

Aug. 6, 1997). In accord with other courts nationwide,[2] these *Lax* factors have been adopted and routinely applied by courts in this judicial district. *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, 18-CV-2268 *et al.*, 2018 U.S. Dist. LEXIS 104185, at *12 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, 17-CV-06130 (LTS)(SN), 2017 U.S. Dist. LEXIS 187238, at *3 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004).

During the Class Period, the UCO Investor Group: (1) purchased 931,482 shares of UCO stock; (2) expended $1,707,522 on its purchases of UCO stock; (3) retained 34,043 of its shares of UCO stock; and (4) as a result of the disclosure of the fraud, suffered a loss of $518,897 in connection with its Class Period purchases of UCO securities. *See* Lieberman Decl., Ex. C. Because the UCO Investor Group possesses the largest financial interest in the outcome of this litigation, it may be presumed to be the "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3. The UCO Investor Group Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the

---

[2] *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 U.S. Dist. LEXIS 14878, at *22-*25 (E.D.N.Y. Mar. 2, 2007).

> representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23 (a).

In making its determination that Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *Greebel v. FTP Software*, 939 F. Supp. 57, 60 (D. Mass. 1996). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997); *Fischler v. AMSouth Bancorporation*, No. 96-1567-Civ-T-17A, 1997 WL 118429, at *2 (M.D. Fla. Feb. 6, 1997)); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d at 296.

The typicality requirement of Fed. R. Civ. P. 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "[T]he claims of the class representative need not be identical [to] those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'" *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992)).

The claims of the UCO Investor Group are typical of those of the Class. The UCO Investor Group alleges, as do all class members, that Defendants violated federal securities laws by making

what they knew or should have known were false or misleading statements of material facts concerning the Company, or omitted to state material facts necessary to make the statements they did make not misleading. The UCO Investor Group, as did all members of the Class, purchased UCO securities during the Class Period at prices artificially inflated by Defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

The UCO Investor Group is an adequate representative for the Class. There is no antagonism between the interests of the UCO Investor Group and those of the Class, and its losses demonstrate that it has a sufficient interest in the outcome of this litigation. Finally, the UCO Investor Group has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this action, and submits its choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

Moreover, the UCO Investor Group constitutes an appropriate group of the type routinely appointed to serve as Lead Plaintiffs. *See, e.g.*, *In re Blue Apron Holdings, Inc. Sec. Litig.*, 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15, 2017); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001)

("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding that a group of seven shareholders with the greatest loss was "presumptively the most adequate plaintiff"); *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding that "there can be no doubt" that the PSLRA permits appointment of groups and appointing group consisting of six members with the largest financial interest as lead plaintiff); *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d. Cir. 2001) ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff") (citation omitted).

Further demonstrating its adequacy, the UCO Investor Group's members have submitted a Joint Declaration attesting to, *inter alia*, their backgrounds, their investing experience, their understanding of the responsibilities of a lead plaintiff pursuant to the PSLRA, their decision to seek appointment jointly as co-lead plaintiffs, and the steps that they are prepared to take to cooperatively prosecute this litigation on behalf of the Class. *See* Lieberman Decl., Ex. D. Courts routinely appoint investor groups as lead plaintiff under such circumstances. *See, e.g.*, *Blue Apron*, 2017 WL 6403513, at *4 (appointing group of four unrelated investors that submitted declaration attesting "it is prepared to work cooperatively to serve the best interests of the class," and finding that the group is not "so large as to be unwieldy and impracticable"); *West Palm Beach Police Pension Fund v. DFC Global Corp.*, 2014 U.S. Dist. LEXIS 49595, at *7 (E.D. Pa. Apr. 9, 2014) (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members); *La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, 2012 U.S. Dist. LEXIS 89192, at *11 (D. Vt. Apr. 27, 2012) (finding a joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation").

### 4. The UCO Investor Group Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing the UCO Investor Group as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

> (aa)  will not fairly and adequately protect the interests of the class; or
>
> (bb)  is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(II).

The ability and desire of the UCO Investor Group to fairly and adequately represent the Class has been discussed above. The UCO Investor Group is not aware of any unique defenses Defendants could raise that would render it inadequate to represent the Class. Accordingly, the UCO Investor Group should be appointed Lead Plaintiff for the Class.

### B. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with lead plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'") (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008)); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Here, the UCO Investor Group has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions, and has

successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume. *See* Lieberman Decl., Ex. E. Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer. Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010. *Id*. Most recently, Pomerantz announced as Lead Counsel on behalf of a class of Fiat investors that it has reached a $110 million settlement with the company. *Id.* As a result of Pomerantz's extensive experience in securities litigation and class actions involving issues similar to those raised in the Action, Pomerantz has the skill and knowledge necessary to enable the effective and expeditious prosecution of the Action. Thus, the Court may be assured that by approving the selection of Lead Counsel by the UCO Investor Group, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, the UCO Investor Group respectfully requests that the Court issue an Order: (1) appointing the UCO Investor Group as Lead Plaintiff for the Class; and (2) approving Pomerantz as Lead Counsel.

Dated: September 28, 2020

            Respectfully submitted,

            POMERANTZ LLP

            */s/ Jeremy A. Lieberman*
            Jeremy A. Lieberman
            J. Alexander Hood II
            600 Third Avenue, 20th Floor
            New York, NY 10016
            Telephone: (212) 661-1100
            jalieberman@pomlaw.com

ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Counsel for Lead Plaintiff Movant UCO Investor Group and Proposed Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
peretz@bgandg.com

*Additional Counsel for Lead Plaintiff Movant UCO Investor Group*