**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LUCIANO DI SCALA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> PROSHARES ULTRA BLOOMBERG CRUDE OIL, PROSHARE CAPITAL MANAGEMENT LLC, PROSHARES TRUST II, MICHAEL L. SAPIR, TIMOTHY N. COAKLEY, and TODD B. JOHNSON, <br><br> Defendants. | Case No. 1:20-cv-05865-NRB |

**LEAD PLAINTIFF MOVANT HONGGUI QU'S MEMORANDUM OF LAW IN OPPOSITION TO THE COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

Lead plaintiff movant Honggui Qu ("Qu") submits this memorandum of law in support of his motion for appointment as lead plaintiff and approval of lead counsel (Dkt. No. 37), and in opposition to the five competing motions for appointment as lead plaintiff and approval of lead counsel filed by other investors in this action (Dkt. Nos. 21, 23, 28, 34, 41).

## I.    INTRODUCTION

Six movants filed competing motions for appointment as lead plaintiff and approval of lead counsel pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[1] With respect to the lead plaintiff determination, the question presently before the Court is which of these movants is the "most adequate plaintiff"—*i.e.*, the plaintiff "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA directs courts to appoint the "most adequate plaintiff" as lead plaintiff, and provides a rebuttable presumption that the most adequate plaintiff is the plaintiff or movant that, *inter alia*, has the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). The presumption may be rebutted, however, by a showing that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

While movant Edmund Jin ("Jin") claims to have the largest financial interest in this matter, his claimed losses are suspect. Most of Jin's losses are the result of massive options trades. Jin wrote (*i.e.* sold) put options, granting other investors the right to force Jin to acquire common stock at above market prices, which they did. Moreover, Jin has failed to state whether his few potentially open market purchases, made earlier in the Class Period, were actually the

---

[1] Movant Emir Tavukcuoglu, however, filed a response to the competing lead plaintiff motions on October 8, 2020, in which he concedes that he "did not suffer the greatest loss" and is not best suited to be lead plaintiff. *See* Dkt. No. 45.

result of pre-Class Period put option sales. If they are, Jin's claimed losses are overstated and misleading since Jin would be precluded from claiming that they are Class Period transactions. At a minimum, Jin would also be required to offset his loss with proceeds from these earlier options sales.

Regardless of whether Jin's loss is overstated, his near exclusive options trading also renders him atypical of the class he seeks to represent, and subject to unique defenses. Accordingly, his lead plaintiff motion should be denied.

The movant with the next largest financial interest is Honggui Qu. Unlike Mr. Jin, however, Qu is typical of the class and is not subject to any unique defenses. As such, he is the presumptively most adequate plaintiff, and no other movant can rebut this presumption. Therefore, Qu's motion should be granted, he should be appointed lead plaintiff, and all competing motions should be denied.

## II.   ARGUMENT

Of all the lead plaintiff movants, Edmund Jin claims to have the largest financial interest. His loss, however, appears to be both overstated and misleading.  Moreover, his massive put option sales make him atypical of the class he seeks to represent and subjects him to a variety of unique defenses. As such, he is not a *bona fide* movant. Qu is the movant with the next largest loss, and he does not suffer from any of the issues that Jin does. In fact, no movant will be able to rebut the presumption that Qu is the most adequate plaintiff. Therefore, his motion should be granted.

### A.   The PSLRA-Mandated Procedure for Appointing a Lead Plaintiff

The PSLRA directs the court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members," *i.e.*, the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i).

The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" is the movant or group of movants that "has either filed the complaint or made a motion," "has the largest financial interest in the relief sought by the class," and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

After a presumptively most adequate plaintiff is identified, the Court must then determine if the presumption has been rebutted through "proof" by a member of the purported plaintiff class that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). If the presumption is rebutted, the presumption moves to the movant with the next largest financial interest.

### B. Jin Is Inadequate, Atypical, and Subject to Unique Defenses

While Jin claims to have the largest financial interest and to be the most adequate plaintiff, he is not eligible for appointment as lead plaintiff because he "will not fairly and adequately protect the interests of the class" and "is subject to unique defenses" that render him "incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). A majority (if not all) of Jin's losses are the result of options transactions, and it appears that he has improperly included transactions in his certification and loss chart which overstate his losses. To disqualify Jin, "the Court need not conclude that [this] defense is likely to or will succeed." *In re Hebron Tech. Co., Ltd. Sec. Litig.*, No. 20-cv-4420-PAE, 2020 WL 5548856, at *7 (S.D.N.Y. Sept. 16, 2020) (citation omitted). Instead, only a "potential" that he is "subject to unique defenses" is necessary to disqualify him. *Id.* (citation omitted).

According to Jin's loss chart, it is clear that almost all of his losses were either attributable to options transactions or shares that he was obligated to purchase as a result of

options transactions.  For example, of his purported $18.2 million in total losses,[2] more than $6.5 million was the result of writing 50,000 May 8, 2020 put options with a $2.50 strike price, and *at least $12.2 million* were the result of his being obligated to purchase common stock as a result of his writing of put options.[3] At most, only about $3.2 million in Jin's losses, or less than 20%, could possibly be attributable to regular common stock purchases.[4] This makes Jin atypical of the class that he seeks to represent.

Assuming that Jin's loss chart is accurate, and does not include ineligible transactions or overstatements of his losses, approximately 82% of his losses were the result of options transactions. This makes him atypical. District Court Judge Colleen McMahon recently encountered a similar situation, in which a lead plaintiff movant had "approximately 60% of his claimed losses [come] as a result of options trading, which included sales of both puts and calls during the same time period." *Cook v. Allergn PLC*, No. 18-cv-12089-CM, 2019 WL 1510894, at *1 (S.D.N.Y. Mar. 21, 2019).  In that case, the court held that the movant was not "an investor whose claims will turn out to be typical of the average common stockholder within the meaning of Fed. R. Civ. P. 23(a)(3)." *Id.* As Judge McMahon further explained, the "appointment of [this movant] as lead plaintiff very likely 'would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and he could subject the class to unique defenses, causing unnecessary conflict.'" *Id.* (quoting *In re Elan*

---

[2] Jin has approximately $4 million in gains from certain options transactions. *See* Dkt. No. 24-4.

[3] All of Jin's April 15-17, 2020 common stock purchases were the result of options transactions. This is clear because they were made at either exactly $2.00 or $2.50, which was way above the daily trading range for the stock that had highs for the three days of $1.72, $1.64 and $1.56, and in the amounts assigned to him for the options expiring April 17, 2020 at $2.00 and $2.50 respectively. *See* Dkt. No. 24-4.

[4] This figure includes common stock transaction during March of 2020. *See* Dkt. No. 24-4.

*Corp. Sec. Litig.*, No. 08-cv-08761-AKH, 2009 WL 1321167, at *2 (S.D.N.Y. May 11, 2009)). The same logic applies with equal force here.

While it is clear that at least 82% of Jin's losses were the result of options transactions, it is quite possible that up to 100% of his class period transactions were the result of options transactions. The only transactions that appear to possibly be regular common stock purchases were those made in March of 2020. However, since all of these purchases were in blocks of 50,000 shares, which is typical of options transactions, and the rest of Jin's trading history demonstrates that his preferred trading strategy was to write put options, it is possible that all of these transactions were the result of options transactions. *See* Dkt. No. 24-4. Many courts have found that movants who only traded options were atypical. *See, e.g.*, *Andrada v. Atherogenics, Inc.*, No. 05-cv-00061-RJH, 2005 WL 912359, at *5 (S.D.N.Y. Apr. 19, 2005); *see also Weikel v. Tower Semiconductor, Ltd.*, 183 F.R.D. 377, 391 (D.N.J. 1998) (rejecting certification of class representative who only purchased options where factual issues regarding value of options and damages would divert focus from the underlying securities litigation). This is because the nature of "options trading and the information [] used to make [those] investment decisions could become the focus of the litigation, distracting from the central issue: did [the Company] commit a fraud on the market?" *Applestein v. Medivation Inc*, No. 10-cv-00998 MHP, 2010 WL 3749406, at *4 (N.D. Cal. Sept. 20, 2010). Thus, investors who trade only in options "should not be appointed lead." *Id.*

Jin's motion is devoid of any information regarding whether any of the March 2020 purchases contained in his certification and loss chart were the result of options that were written before the Class Period. While it appears that this may be the case due to the timing, price and amounts of the transactions, and Mr. Jin's overall trading strategy, the competing movants have

no way of confirming that he has overstated his losses based on the information currently provided to the Court. This information is vital since, if any of these transactions were the result of put options that were written prior to the Class Period, they would not be considered Class Period transactions for purposes of the motion. *See Jurkowski v. Molycorp, Inc.*, No. 13-cv-5697-PAC, 2014 WL 12792750, at *3 (S.D.N.Y. Apr. 2, 2014) ("[Movant] sold put options before the class period and therefore there is no 'link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price.'") (quoting *In re Priceline.com Inc.*, 236 F.R.D. 89, 100 (D. Conn. 2006)). Thus, if Jin has improperly included these transactions, his losses are vastly overstated since these transactions should not be included (or at a minimum the proceeds from the options sales should be offset against his losses), and his certification is materially misleading. *See Molycorp*, 2014 WL 12792750, at *2 ("[Movant's] gains from the options sale . . . must be subtracted from his purchase price.").

All of these issues are going to become the focus of the litigation at later stages, including class certification. As such, these adequacy, typicality, and unique defense issues should disqualify Jin from representing the class. *See Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 123 (S.D.N.Y. 2001) ("When a defense that is unique to a class representative threatens to dominate or even interfere with that plaintiff's ability to press the claims common to the class, then that threat must be analyzed with care."). "A unique defense need not be proven in order to defeat class certification." *See Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 476 (S.D.N.Y. 1989) ("[W]hether these defenses will be successful is of no matter. . . . Each of these plaintiffs would be required to devote considerable time to rebut the claim that their purchases were based not on the integrity of the market. . . . Clearly, this situation would prejudice absent class members.").

6

If the Court is still willing to consider Mr. Jin's motion in spite of these fundamental defects, Movant Qu respectively requests limited discovery into Jin's pre-Class Period transactions to confirm whether certain of his Class Period transactions were the result of writing put options before the Class Period. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iv); *Broadfoot v. Barrick Gold Corp.*, No. 17-cv-3507-NRB, 2017 WL 3738444, at *1 (S.D.N.Y. Aug. 9, 2017) (granting limited discovery where "there exists a potential that [a movant] is in a unique position that would defeat typicality and adequacy"); *Rao v. Quorum Health Corp.,* 221 F. Supp. 3d 987, 990 (M.D. Tenn. 2016) (granting limited discovery to determine if movant "will adequately represent the class and whether it is subject to any unique defenses"). This is vital because if Jin engaged in pre-Class Period options transactions that resulted in Class Period purchases, his losses and transactions are materially overstated and misleading, and all of his transactions would be the result of options trades, further demonstrating his inadequacy.

### C. Qu Is the Presumptively Most Adequate Plaintiff and Should Be Appointed as Lead Plaintiff

Since Jin cannot be lead plaintiff, and any presumption that Jin is the most adequate plaintiff has been rebutted, Qu is the presumptively most adequate plaintiff. *See Kuriakose v. Fed. Home Loan Mortg. Co.*, No. 1:08-cv-7281-JFK, 2008 WL 4974839, at *2 (S.D.N.Y. Nov. 24, 2008) ("If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake.") (citation omitted).

Unlike Jin, Qu satisfies all three requirements to be the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). He filed a timely motion for appointment as lead plaintiff. *See* Dkt. No. 37; 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa). He satisfies the requirements of Rule 23, as demonstrated in his memorandum of law in support of his lead plaintiff motion. *See*

Dkt. No. 38 at 7-9; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). And, as explained *infra*, he has the largest financial interest of all *bona fide* movants. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb). Accordingly, Qu is the presumptively most adequate plaintiff.

### 1.    Qu Has the Largest Financial Interest of the Remaining Movants

While the PSLRA does not specify a means of calculating the "largest financial interest" among movants, courts typically consider: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436-37 (S.D.N.Y. 2008).

Of these factors, losses suffered is the most important. *See id.* at 437; *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 395 (S.D.N.Y. 2008) ("Financial loss, the last factor, is the most important element of the test."). In fact, "losses suffered [is] an appropriate proxy for the movants' overall financial interest in the litigation." *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-cv-4846, 2017 WL 6403513, at *3 (E.D.N.Y. Dec. 15, 2017).

Most courts agree that the preferred method to calculate financial losses requires Class Period sales to be matched to purchases on a last in/first out (LIFO) basis. *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100-102 (S.D.N.Y. 2005). Indeed, LIFO is the preferred accounting method because it "has been used not only for lead plaintiff calculations, but also to determine compensation amounts for stockholders suffering losses due to securities fraud." *Id.* at 101.

Here, Qu has the largest financial interest in the relief sought by the class of the remaining movants:[5]

---

[5] For the sake of brevity, only three of the remaining five movants with the next largest financial interests are represented in this chart. The data included in the chart is derived from the movants' respective loss charts (Dkt. Nos. 24-4, 32-4, 36-3, 39-3).

| Movant | Gross Shares Purchased | Net Shares Purchased | Net Expenditure | Loss (LIFO) |
|---|---|---|---|---|
| ~~Edmund Jin~~ | ~~600,000~~ | ~~600,000~~ | ~~$23,646,593.00~~ | ~~$18,087,125.23~~ |
| Honggui Qu | **303,152** | 25,000 | $2,706,909.93 | **$2,401,783.33** |
| Pinchas Dan Danino | 120,000 | 120,000 | $5,015,000.00 | $1,999,806.45 |
| Advanced Wealth Management, LLC | 79,760 | 79,760 | $4,022,296.80 | $1,870,372.00 |

Qu has a larger claimed LIFO loss and purchased more shares during the class period than every other movant besides Jin. As such, Qu has the largest financial interest of any *bona fide* movant in the relief sought by the class and is the presumptively most adequate plaintiff.

### 2.    The Presumption that Qu Is the Most Adequate Plaintiff Has Not Been Rebutted and Cannot Be Rebutted

The presumption that Qu is the presumptively most adequate plaintiff may be rebutted only upon "proof" that he "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render [him] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof has been—or can be—presented. Qu is not aware of any reason he would be incapable of serving as lead plaintiff. As such, Qu should be appointed as lead plaintiff, and no other movant is entitled to consideration. *See Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (the lead plaintiff process ends when "a candidate succeeds in both the first and second phases of inquiry").

### D.    Lead Plaintiff's Selection of Counsel Should Be Approved

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Qu's selection of Glancy Prongay & Murray LLP as lead counsel for the class should be approved. *See Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015) ("There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel.").

Glancy Prongay & Murray LLP has the expertise, resources, and experience needed to efficiently and effectively conduct this litigation. *See* Dkt. No. 39-5 (Glancy Prongay & Murray LLP firm résumé). The firm has more than 20 years of experience successfully representing injured investors. *See id.* By approving Qu's selection of counsel, the Court will ensure that the class receives the highest caliber of legal representation. Accordingly, Qu's selection of lead counsel for the class should be approved. *See Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 266 (S.D.N.Y. 2019) ("Glancy Prongay & Murray LLP, is competent and experienced. Accordingly, this Court grants Glancy Prongay & Murray LLP's motion to be appointed lead counsel.").

## III.    CONCLUSION

For the foregoing reasons, Qu respectfully requests that the Court grant his motion and enter an Order: (1) appointing Qu as lead plaintiff; (2) approving Qu's selection of Glancy Prongay & Murray LLP as lead counsel for the class; and (3) denying the competing motions.

Respectfully submitted,

Dated: October 13, 2020

**GLANCY PRONGAY & MURRAY LLP**

By:  */s/ Gregory B. Linkh*
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Movant Honggui Qu and Proposed*
*Lead Counsel for the Class*

11

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On October 13, 2020, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Eastern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 13, 2020, at Brooklyn, New York.

*/s/ Gregory B. Linkh*
Gregory B. Linkh