**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUCIANO DI SCALA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PROSHARES ULTRA BLOOMBERG CRUDE OIL, PROSHARE CAPITAL MANAGEMENT LLC, PROSHARES TRUST II, MICHAEL L. SAPIR, TIMOTHY N. COAKLEY, and TODD B. JOHNSON,<br><br>Defendants. | **CASE No.: 1:20-cv-05865-NRB**<br><br>**MEMORANDUM OF LAW OF PINCHAS DAN DANINO IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS**<br><br>**CLASS ACTION** |

1

Lead Plaintiff movant Pinchas Dan Danino ("Danino") respectfully submits this opposition to the competing lead plaintiff motions. (Dkt. Nos. 21, 34, 37, 41.)

## I.      INTRODUCTION

Six lead plaintiff motions were filed in this Court seeking appointment as lead plaintiff on behalf of all investors who purchased or otherwise acquired ProShares Ultra Bloomberg Crude Oil ("UCO") securities from March 6, 2020 and April 27, 2020, inclusive (the "Class Period"), and approval of lead counsel. One of the lead plaintiff movants filed a notice of non-opposition to the competing motions, (Dkt. No. 45), thus five motions remain pending.

Despite Edmund Jin's ("Jin") large purported loss, he cannot trigger the Private Securities Litigation Reform Act of 1995's ("PSLRA") most adequate plaintiff presumption. Due to his significant and potentially troubling options trading activity, Jin is atypical, subject to unique defenses, and would open significant factual issues that would become a distraction and could derail the class action.

Honggui Qu ("Qu") may appear to have suffered second largest loss, thereby entitling him to the most adequate plaintiff presumption after Jin. However, Qu sold a substantial amount of his shares before corrective disclosures – and thus his loss is inflated.

Of the remaining movants, Danino satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure and has the largest remaining financial interest. As such, the PSLRA provides that Danino is presumed to be the "most adequate plaintiff" and, therefore, should be appointed lead plaintiff on behalf of the putative class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

## II.   ARGUMENT

"In appointing a lead plaintiff, the court's first duty is to identify the movant that is presumptively entitled to that status." *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001). "The process begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'" *Id*. "Once the court has identified the movant with 'the largest financial interest in the relief sought by the class,' it should then turn to the question whether that movant 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure,' and is thus the presumptively most adequate plaintiff." *Id*.

Importantly, in "inquiring whether the movant has preliminarily satisfied the typicality requirement, [courts] should consider whether the circumstances of the movant with the largest losses 'are markedly different or the legal theory upon which the claims [of that movant] are based differ[] from that upon which the claims of other class members will perforce be based.'" *Id*. at 265. In addition, the presumptive lead plaintiff cannot be "subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id*. at 222.

"If (for any reason) the court determines that the movant with the largest losses cannot make a threshold showing of typicality or adequacy, then the court should . . . disqualify that movant from serving as lead plaintiff" and "then identify the movant with the next largest loss, consider whether that movant satisfies Rule 23's requirements, and repeat this process until a presumptive lead plaintiff is identified." *Id*. at 267.

### A.   Jin Is Atypical

Movant Jin, on assignment from Jin Yuan Zhao ("Zhao"), purports to have the largest financial interest. After examining the financial interest of all movants, the next step in determining the most appropriate lead plaintiff is to query whether the movant with the largest interest also

satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, including whether the movant is typical and adequate.

The rebuttable presumption that the most appropriate plaintiff is the movant with the largest financial interest can be rebutted upon proof that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). Here, Jin, cannot satisfy Rule 23's typicality requirement and is subject to unique defenses that render him incapable of adequately representing the class and thus, cannot be appointed as the lead plaintiff.

### 1.   Jin Transacted Significantly in Options

Jin transacted extensively in options, purporting to gain $4,063,735 and lose $6,533,236.67 on these transactions. (Dkt. No. 24-4.) Options transactions even when coupled with other securities transactions, such as common stock, can demonstrate atypicality. Chief Judge McMahon, found a similar movant who purchased options (puts and calls) and common stock atypical stating such an investor, "is not, in the opinion of this court, an investor whose claims will turn out to be typical of the average common stockholder within the meaning of Fed. R. Civ. P. 23(a)(3)." *Cook v. Allergn PLC*, No. 18 CIV. 12089 (CM), 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019). Recognizing such an investor could cause ancillary distractions from litigating the class's interests, Judge McMahon concluded, that appointing a similarly situated investor as Jin "as lead plaintiff very likely 'would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and he could subject the class to unique defenses, causing unnecessary conflict.'" *Id*. (citing *In re Elan Corp. Sec. Litig.*, No. 08 Civ. 08761 (AKH), 2009 WL 1321167, at *2 (S.D.N.Y. May 11, 2009)). Accordingly,

Danino, who only transacted in UCO shares, satisfies the typicality requirement and is better suited to be lead plaintiff the litigation as he would avoid the unnecessary distractions of trading in options – including those in the nonexhaustive list of factual issues from *Allergn*.

### 2.    Jin Transacted in "Short Sales"

Additionally, according to his loss chart, Jin, engaged in "short sales" of $7,047,165 further demonstrating his atypicality. (Dkt. No. 24-4.) "Short sales raise the question of whether the seller was actually relying on the market price, and the class is not served by its representative coming under such scrutiny." *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1110 (N.D. Cal. 2001); *Zlotnick v. TIE Commc'ns*, 836 F.2d 818, 823 (3d Cir. 1988) (declining to presume reliance on the part of a short seller and stating that "since [movant] decided that the market price was not an accurate valuation of the stock at the time of his short sale, we should not presume that it was reasonable for him to rely on the market price at the time of his purchase.").

Even if these short sales are put options, Jin is still atypical and subject to unique defenses. "A 'put option' is a contract giving one party the right to sell, and obligating one party to buy, a stock or commodity at a given price, known as a 'strike price,' on a particular date. If the market price on that date is below the strike price, then the option becomes valuable because one could purchase the stock in the market and immediately resell it for a profit." *Chechele v. Sperling*, 758 F.3d 463, n. 6 (2d Cir. 2014). Much like a short sale, by covering put option contracts, Jin expressed a concern that the price of UCO would continue to decline below the strike price, rather than the belief that the price of the shares would increase in value as was typical for the class. *See, e.g., Marcus v. J.C. Penney Co., Inc.*, 2014 WL 11394911, at *7 (E.D. Tex. Feb. 28, 2014) (finding that "short selling shares and buying to cover those short sales . . . [is] atypical of the class as profit accrues when the price of the security decreases").

These purchases call into question the accuracy of his declaration when he proclaimed that "I specifically chose to invest in UCO on Mr. Zhao's behalf during the Class Period to secure a profit from a rebound in the price of oil." (Dkt. No. 24-2.) The nature of the "short sales" supports otherwise as they reflect a pessimistic view of the price of UCO securities, not that the price would increase. At minimum, the "short sales" do not reflect a long-term, or even medium-term, optimistic view of the price of UCO securities. Accordingly, Jin's timing and engagement of "short sales" renders him atypical of being appointed lead plaintiff.

**B.    Qu's Losses Are Inflated; Qu's Financial Interest is Smaller than Danino's**

Qu purports to have the second largest loss but inflated his losses by failing to account for his in-and-out transactions. (Dkt. No. 39-3). "When evaluating a plaintiff's financial interest for purposes of selecting a lead plaintiff, courts in this Circuit consider that plaintiff's recoverable loss, and do not take into account losses from shares sold prior to corrective disclosures." *Gutman v. Sillerman*, No. 15 CIV. 7192 (CM), 2015 WL 13791788, at *4 (S.D.N.Y. Dec. 8, 2015) (citing *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 272-275 (S.D.N.Y. 2015)).

By taking out Qu's in-and-out trades before the first alleged partial disclosure, a period in which he incurred a $2,713,734.57 loss, Qu's proper post-disclosure *gain* is $311,948.64. *See* Ex. 1.

There are also practical reasons to refrain from appointing individuals who have extensive in-and-out trades as lead plaintiffs. In *In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960 * 6 (N.D. Ill. Mar. 15, 2005), the Court refused to appoint an in-and-out trader as lead plaintiff because it would "have to use considerable resources to establish that even though it was an in-and-out trader, its losses nevertheless were caused by the alleged fraudulent statements."

Here, Qu sold a substantial amount of his shares before any of the alleged corrective disclosures. Qu's financial interest is therefore less than that of Danino. Qu is therefore not the presumptive lead plaintiff.

### C.    DANINO SHOULD BE APPOINTED LEAD PLAINTIFF

Danino, with losses of approximately $1,975,737.50, all from UCO shares and all held through the end of the class period, is the presumptive lead plaintiff as he has the remaining largest financial interest and satisfies the typicality and adequacy requirements of Rule 23. Danino should be appointed lead plaintiff and his selection of Lead Counsel should be approved.

To overcome the strong presumption entitling Danino to be appointed Lead Plaintiff, the PSLRA requires "proof" that the presumptive lead plaintiff is inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof exists in this case and any arguments to the contrary should be flatly rejected. Competing movants may attempt to conjure up speculative arguments to rebut the powerful presumption in favor of Danino. Any such speculative challenge does not satisfy the PSLRA's requirement that the presumptively most adequate plaintiff may only be rejected if a rival movant presents "proof" that the presumptive lead plaintiff, here Danino, will not adequately represent the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004) ("[C]onclusory assertions of inadequacy are, however, insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence …."); *Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 403-04 (S.D.N.Y. 2004) (emphasizing that the PSLRA requires proof of inadequacy and not mere "speculation").

Moreover, although the Court may compare putative lead plaintiff's losses when assessing financial stake, once the statutory presumption has attached, it cannot be rebutted through relative comparison as to adequacy or typicality. *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002); *see*

*also Sofran*, 220 F.R.D. at 402 ("That the district court believes another plaintiff may be 'more typical' or 'more adequate' is of no consequence. So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirement, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.").

Danino is typical and adequate. On top of that, Danino holds bachelor's degrees in Education and Law and a master's degree in Talmud. (Dkt. No. 32-3.) He is experienced in overseeing complex projects as he has developed real estate projects and managed construction projects. *Id*. He is currently the Managing Director of the Economic Company of Karnei Shomron. *Id*.

As Danino has made a prima facie demonstration of his typicality and adequacy, has the largest remaining financial interest, and no movant has rebutted the presumption with proof, Danino must be appointed Lead Plaintiff.

**D.    DANINO'S SELECTION OF COUNSEL SHOULD BE APPROVED**

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005) (the Lead Plaintiff "is primarily responsible for selecting lead counsel.").

Danino, a lawyer by profession, has selected The Rosen Law Firm, P.A. as Lead Counsel based on his research of the firm, the firm's experience, and the firm's communication. (Dkt. No. 32-3.) The firm has the resources and expertise to litigate this action efficiently and aggressively. As the firm's resume reflects, it is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class

actions on behalf of investors. (Dkt. No. 32-5.) Thus, the Court may be assured that by approving Danino's selection of counsel, the members of the class will receive excellent legal representation.

### E.     COMPETING MOTIONS SHOULD BE DENIED

The competing motions should be denied as Danino satisfies the requirements of Rule 23, has the greatest remaining financial interest in the litigation, and should therefore be appointed Lead Plaintiff without further analyses. *Cavanaugh*, 306 F.3d at 732 ("The statutory process is sequential: The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical.").

In no way is Danino conceding or acknowledging that the competing movants are adequate or that their claims are typical. Danino reserves the right to address the competing movant's adequacy or typicality, should the Court reach those motions.

### III. CONCLUSION

For the foregoing reasons, Danino's motion should be granted in its entirety and the competing motions should be denied.

Dated: October 13, 2020                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
/s/ Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff*
*and Class*

9

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2020, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Phillip Kim