**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LUCIANO DI SCALA, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PROSHARES ULTRA BLOOMBERG CRUDE OIL, PROSHARE CAPITAL MANAGEMENT LLC, PROSHARES TRUST II, MICHAEL L. SAPIR, TIMOTHY N. COAKLEY, and TODD B. JOHNSON,<br><br>　　　　　Defendants. | Case. No. 1:20-cv-05865-NRB<br><br><br>Hon. Naomi Reice Buchwald |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION OF EDMUND JIN FOR APPOINTMENT AS LEAD
PLAINTIFF AND APPROVAL OF SELECTION OF LEAD
COUNSEL; AND IN OPPOSITION TO COMPETING MOVANTS**

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ 2

PRELIMINARY STATEMENT ........................................................................................ 4

ARGUMENT ...................................................................................................................... 5

I.  OPPOSING MOVANTS HAVE FAILED TO REBUT THE STRONG PRESUMPTION IN FAVOR OF MR. JIN'S APPOINTMENT .................................................................... 5

    A.  Options Transactions Not Disqualifying .................................................. 5

    B.  Mr. Jin Possesses the Largest Financial Interest Based Only on His UCO Share Purchases .................................................................................... 9

    C.  Mr. Jin Did not Engage in Short Selling or Purchase Put Options ....................... 11

II.  THE MOTIONS OF QU AND DANINO SHOULD BE DENIED ............................... 12

CONCLUSION .................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*,
No. 18-CV-3608 (VSB), 2019 WL 364570 (S.D.N.Y. Jan. 30, 2019) .....................................5

*Deering v. Galena Biopharma, Inc.*,
No. 3:14-cv-00367-SI, 2014 WL 4954398 (D. Or. Oct. 3, 2014) ...........................................12

*In re Elan Corp. Sec. Litig.*,
No. 1:08-cv-08761-AKH, 2009 WL 1321167 (S.D.N.Y. May 11, 2009) .................................8

*Freudenberg v. E\*Trade Fin. Corp.*,
No. 07 Civ. 8538, 2008 WL 2876373 (S.D.N.Y. July 16, 2008) .........................................6, 7

*Goldstein v. Puda Coal, Inc.*,
827 F. Supp. 2d 348 (S.D.N.Y. 2011) ...................................................................................6, 8

*Hall v. Medicis Pharm. Corp.*,
No. CV-08-1821-PHX-GMS, 2009 WL 648626 (D. Ariz. Mar. 11, 2009) .....................6, 7, 8

*In re Harris*,
464 F.3d 263 (2d Cir. 2006) ....................................................................................................3

*Isaacs v. Musk*,
No. 18-cv-04865-EMC, 2018 WL 6182753 (N.D. Cal. Nov. 27, 2018) ................................10

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015) ................................................................................4, 11

*In re LightInTheBox Holding Co., Ltd. Sec. Litig.*,
No. 13 CIV. 6016 PKC, 2013 WL 6145114 (S.D.N.Y. Nov. 21, 2013) ..................................6

*Metro Servs. Inc. v. Wiggins*,
158 F.3d 162 (2d Cir. 1998) .....................................................................................................4

*In re MicroStrategy Inc. Sec. Litig.*,
110 F. Supp. 2d 427 (E.D. Va. 2000) .......................................................................................7

*In re Priceline.com Inc. Sec. Litig.*,
236 F.R.D. 89 (D. Conn. 2006) ................................................................................................7

*Stone v. Agnico-Eagle Mines Ltd.*,
280 F.R.D. 142 (S.D.N.Y. 2012) ............................................................................................12

*Teran v. Subaye, Inc.*,
  No. 11 Civ. 2614 (NRB), 2011 WL 4357362 (S.D.N.Y. Sept. 16, 2011) .................................3

*In re Tronox, Inc. Sec. Litig.*,
  262 F.R.D. 338 (S.D.N.Y. 2009) ...............................................................................................9

**Rules & Statutes**

Fed. R. Civ. P. 23 ...............................................................................................................4, 11

15 U.S.C. § 78c(a)(10) ................................................................................................................5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .............................................................................................4

**Docketed Cases**

*Cook v. Allergan plc*, No. 18-cv-12089 (S.D.N.Y. Dec. 21, 2018) .............................................10

*Klein v. Allergan plc*, No. 18-cv-12219 (S.D.N.Y. Dec. 26, 2018) .............................................10

Proposed Lead Plaintiff Mr. Jin respectfully submits this reply memorandum in further support of his motion for appointment as Lead Plaintiff, and approval of Labaton Sucharow as Lead Counsel for the Class (ECF No. 21);[1] and in opposition to all competing lead plaintiff motions.[2]

## PRELIMINARY STATEMENT

Mr. Jin, a sophisticated investor with the largest financial interest of **$18,208,257.26** who also satisfies the typicality and adequacy requirements of Rule 23, is the presumptive Lead Plaintiff under the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Opposing movants have only offered speculative arguments in an attempt to rebut Mr. Jin's presumption as the most adequate plaintiff. These contentions are lacking any evidence, and therefore fail.

***First***, ignoring the fact that options are included in the putative Class definition, Qu and Danino attempt to argue that Mr. Jin is atypical simply for having a financial interest arising primarily from transactions related to options. However, because they have failed to make any arguments specific to Mr. Jin's actual options and options-related transactions, Mr. Jin's typicality and adequacy remain unscathed. ***Second***, even crediting Qu and Danino's meritless argument that options are somehow inherently atypical, approximately ***$3.2 million*** of Mr. Jin's

---

[1] All definitions and abbreviations used herein remain unchanged from Mr. Jin's previous submission before the Court. *See* ECF Nos. 21, 22, 24, 48. Unless otherwise noted, emphasis has been added throughout.

[2] The only competing lead plaintiff movants remaining are Qu (ECF No. 37) and Danino (ECF No. 23). AWM has now withdrawn its motion (ECF No. 50) and the UCO Investor Group failed to timely file an opposition brief, indicating its motion is likely abandoned. *See Teran v. Subaye, Inc.*, No. 11 Civ. 2614 (NRB), 2011 WL 4357362, at *2 n.2 (S.D.N.Y. Sept. 16, 2011) (Buchwald, J.) (lead plaintiff movant who failed to file opposition and reply brief deemed to have abandoned motion). Regardless, should the UCO Investor Group attempt to re-enter the fray, any potential arguments raised in reply should be deemed as untimely. *See In re Harris*, 464 F.3d 263, 268 n. 3 (2d Cir. 2006) (Noting it is generally improper to "consider issues raised in a reply brief for the first time, because" it would not provide "adequate opportunity to respond to it.").

4

investment losses are attributable to direct market purchases of UCO shares.  Therefore, even setting aside any losses related to options, Mr. Jin *still* has the largest financial interest on long purchases alone.  ***Finally***, Danino's assertion that Mr. Jin engaged in short sales or purchased put options hoping the price of UCO shares would decline is incorrect.  Instead, Mr. Jin sold put options anticipating that UCO shares would *not* decrease in value.

Accordingly, as no competing movant has, or will be able to, rebut the presumption in favor of Mr. Jin with the requisite "proof," Qu and Danino's arguments should be rejected. *Metro Servs. Inc. v. Wiggins*, 158 F.3d 162, 164 (2d Cir. 1998); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 536 (S.D.N.Y. 2015) ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.") (citation omitted). Mr. Jin respectfully submits that as the unrebutted most adequate plaintiff under the PSLRA, he is entitled to appointment as Lead Plaintiff.

## ARGUMENT

I.    **OPPOSING MOVANTS HAVE FAILED TO REBUT THE STRONG PRESUMPTION IN FAVOR OF MR. JIN'S APPOINTMENT**

A.    **Options Transactions Not Disqualifying**

It is uncontested that Mr. Jin has the largest financial interest out of all competing Lead Plaintiff applicants, and is thus the presumed most adequate plaintiff under the PSLRA.  Qu and Danino, in an attempt to rebut this presumption, argue that Mr. Jin cannot be appointed as Lead Plaintiff because his financial interest is primarily based on options and options-related transactions.  Instead of pointing to specific evidence as to how Mr. Jin's *actual transactions* impact his adequacy and typicality, Qu and Danino instead ask the Court to adopt a rule that options are inherently atypical—even after both movants have adopted the Class definition that

5

*includes options*.  Mr. Jin respectfully submits that these speculative arguments should be rejected as lacking the required proof under the PSLRA.  *See City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*, No. 18-CV-3608 (VSB), 2019 WL 364570, at \*7 (S.D.N.Y. Jan. 30, 2019) (rejecting arguments for "provid[ing] no evidence to support their claims").

   As a preliminary matter, because this case has been brought "on behalf of all investors who purchased or otherwise acquired UCO *securities*"—a definition adopted by all movants in their respective motions[3]—options are clearly included in the putative Class definition.  ECF No. 1 ¶ 1; *see also* 15 U.S.C. § 78c(a)(10) (including options in the definition of "security").  Therefore, Qu and Danino ask the Court to adopt the perplexing stance that Mr. Jin should be disqualified from representing the Class, by virtue of being a member of the Class.  *See In re LightInTheBox Holding Co., Ltd. Sec. Litig.*, No. 13 CIV. 6016 PKC, 2013 WL 6145114, at \*3 (S.D.N.Y. Nov. 21, 2013) (rejecting arguments that options-related losses should be excluded from financial interest calculus where case was brought on behalf of those who "purchased or otherwise acquired . . . securities").  Even assuming *arguendo* that Mr. Jin's financial interest only stems from options (which as discussed *infa*, it does not), this should not disturb his typicality or adequacy to represent the class.

   By way of background, "[i]n light of the Securities Exchange Act's broad definition of 'security,' courts have appointed as lead plaintiffs purchasers of a wide variety of financial instruments.  Further, they often appoint purchasers of one type of securities to represent purchasers of other types of securities of the same issuer where the interests of those purchasers are aligned." *Freudenberg v. E\*Trade Fin. Corp.*, No. 07 Civ. 8538, 2008 WL 2876373, at \*6–7

---

[3] *See* ECF Nos. 32, 38.

(S.D.N.Y. July 16, 2008) (collecting cases).  With respect to options, "investors who traded in options can be appointed lead plaintiff when the focus of the typicality analysis is, as here, 'whether the same or similar injuries arose out of or were caused by Defendants' alleged wrongful course of conduct.'" *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 355 (S.D.N.Y. 2011) (quoting *In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 123–24 (S.D.N.Y. 2001)); *see also Hall v. Medicis Pharm. Corp.*, No. CV-08-1821-PHX-GMS, 2009 WL 648626, at *4 (D. Ariz. Mar. 11, 2009) (collecting cases for proposition that "many courts have appointed options traders as lead plaintiffs to represent the interests of common stockholders").

For example, in *In re Priceline.com Inc. Securities Litigation*, the defendants argued at class certification that the lead plaintiff who transacted primarily in options was unfit to represent a class that included purchasers of common stock.  236 F.R.D. 89, 98 (D. Conn. 2006).  In rejecting this argument, the court held the lead plaintiff's "interests [we]re aligned with those of the class and 'the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price,' remain[ed] intact." *Id.* at 100 (quoting *Basic, Inc. v. Levinson*, 485 U.S. 224, 248  (1988)); *see also E*Trade Fin. Corp.*, 2008 WL 2876373, at *6–7 (citing *Priceline*).[4]  Similarly, in *Hall v. Medicis Pharmaceutical Corp.*, the court rejected arguments against a lead plaintiff applicant who transacted in options.  2009

---

[4] *See also, e.g.*, *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 440 (E.D. Va. 2000) ("[T]he claims of options-holders and stockholders are in most cases sufficiently similar that they should be consolidated 'in form and in fact,' and thus litigated by the same lead plaintiff and lead counsel.") (quoting *In re Orbital Sci. Corp. Sec. Litig.*, 188 F.R.D. 237, 239-40 (E.D. Va. 1999) ("Even if the shareholders and the optionholders are not identically situated in every respect, they share a mutual interest in having the Court resolve these questions about whether the Defendants made any misstatements or omissions, whether they did so with scienter, and whether the price of [the defendant's] common stock became artificially inflated as a result.  The efficiency of resolving these and other questions at once in a single proceeding is beyond serious debate . . . .  Under these circumstances, the only appropriate solution is to consolidate the two actions both in form and in fact.") (internal citations omitted)).

WL 648626, at *4-6 . There, the court found that because the movant "[was] a member of the plaintiff class" that questions of typicality "[were] just as applicable" to options, and that the movant therefore had the "same incentive to establish" defendants' liability—even having "more of an incentive, as he . . . alleged to have suffered a greater loss." *Id.* at *6.

*Medicis Pharm.* is further instructive as to the type of evidence required to rebut the most adequate plaintiff presumption based on options trading. *Id.* at *4. In rejecting the arguments against options, the court first found that the opposing movant had failed "to offer any evidence that [the] *specific* options [were] themselves atypical," and had instead urged the court to adopt the stance "that the claims of all options holders are inherently atypical such that they cannot represent common stockholders." *Id.* at *4. Because the movant had failed to offer "*specific evidence*" related to "the nature of [the specific] options, the history of their purchase and sale, or some other factor made [the presumptive lead plaintiff] inadequate to represent the class," the court held that there was insufficient "proof" to rebut the lead plaintiff presumption. *Id.* at*4.

As applied, Mr. Jin remains typical and adequate. He, as did all members of the Class, transacted in UCO securities at artificially inflated prices in reliance on Defendants' allegedly false and misleading statements. To that end, the substantial losses associated with Mr. Jin's claims arise from Defendants' alleged fraud, and his interests are thus squarely aligned with those of the Class. Moreover, Qu and Danino have failed to put forth *any evidence* as to how Mr. Jin's *actual transactions* may pose a unique defense to the Class. This lack of substance is telling. Indeed, Qu and Danino failed to submit any evidence because there is none to submit. Therefore, Mr. Jin respectfully requests the Court decline to hold that options are inherently atypical, and in so doing, find that Mr. Jin is the rightful Lead Plaintiff under the PSLRA.

**B.**     **Mr. Jin Possesses the Largest Financial Interest Based Only on His UCO Share Purchases**

Even if Mr. Jin's options transactions were of any concern, which they are not, Mr. Jin still possesses the largest loss of ***$3,208,723.86*** based only on his open market share purchases. As a result of Mr. Jin's sizable loss in the UCO shares, which remains the largest of all competing movants, his trading is distinguishable from every case disqualifying options traders. *See Puda Coal*, 827 F. Supp. 2d at 355 (distinguishing cases rejecting options purchasers as lead plaintiff with cases where applicant had purchased both "common stock and options during the class period"); *see also In re Elan Corp. Sec. Litig.*, No. 1:08-cv-08761-AKH, 2009 WL 1321167, at *2 (S.D.N.Y. May 11, 2009) (same).

Understanding that the lion's share of case law rejecting lead plaintiff applicants involve movants who ***only*** invested in options, Qu makes the baseless argument that Mr. Jin's share purchases might be the result of pre-Class Period options. *See* ECF No. 46 and 4-5. This argument is premised solely on the fact Mr. Jin transacted in blocks of shares (just as Qu and Danino did) and frequently trades in options. This argument, however, is simply not true—Mr. Jin's March 2020 share purchases are not related to options in any way. *See* ECF No. 24-3 (all March 2020 purchases were at non-uniform numbers within daily trading range, note that share prices do not account for 1:25 reverse stock split that occurred on or about April 21, 2020). Mr. Jin therefore respectfully requests that the Court reject this warrantless attack on the veracity of his sworn certification.

Qu's own brief even betrays the frivolity of this argument. Specifically, in correctly identifying Mr. Jin's options-related purchases during the period April 15, 2020 through April 17, 2020, Qu notes they "were made at either exactly $2.00 or $2.50, which was way above the daily trading range for the stock." *See* ECF No. 46 at 4 n.3. Comparatively, Mr. Jin's share

9

purchases in March 2020 were all in differing amounts to the hundredth decimal place, and more importantly, ***all within the daily trading range for UCO shares***.  *See* ECF No. 24-3.  Simply put, Mr. Jin's "motion is devoid of any information regarding whether any of the March 2020 purchases . . . were the result of options that were written before the Class Period," ***because there is no such information to report***.[5]  *Id.* at 5.  This tiresome argument should be ignored.

Further, the *only* authority relied upon by Qu and Danino in arguing that Mr. Jin is atypical for having a financial interest that includes losses on shares and options is *Cook v. Allergan plc*, No. 18 Civ. 12089 (CM), 2019 WL 1510894, at *1 (S.D.N.Y. Mar. 21, 2019).  Mr. Jin respectfully submits that the facts of the current motion are distinguishable, and therefore *Allergan* should have no bearing on his Lead Plaintiff appointment.

*First*, none of the pending complaints in *Allergan* were brought on behalf of those who purchased or otherwise acquired securities, instead only common stock.[6]  Here, however, the putative Class definition unquestionably includes UCO options.  *Second*, unlike in *Allergan*, even excluding Mr. Jin's options transactions, he still possesses the largest financial interest of all competing movants.  *Id.* (noting that by excluding the movant's options transactions his loss would be reduced to $420,159, which number was less than the next movant's financial interest of $760,588).  *Finally*, the court in *Allergan* noted its preference for the two institutional investor movants, which cut against the appointment of the individual notwithstanding any options

---

[5]  Accordingly, Qu's request for limited discovery represents nothing more than a harassing fishing expedition lacking the "reasonable basis" as required under the PSLRA, and will "only cause unnecessary delay and expense," warranting its denial.  *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 347–48 (S.D.N.Y. 2009).

[6]  *See* Complaint for Violation of the Federal Securities Laws, *Cook v. Allergan plc*, No. 18-cv-12089 (S.D.N.Y. Dec. 21, 2018) (ECF No. 1) ¶ 1; Class Action Complaint, *Klein v. Allergan plc*, No. 18-cv-12219 (S.D.N.Y. Dec. 26, 2018) (ECF No. 1) ¶ 1.

transactions. *Id.* Here, however, all movants before the Court are individual investors, and Mr. Jin has set forth extensive information detailing his sophistication.

In sum, based on the broad Class definition adopted by all competing movants, Mr. Jin is in fact the *most typical and adequate*. Specifically, Mr. Jin will provide the Class with the broadest possible representation by virtue of his investments in both options and stock. *See Isaacs v. Musk*, No. 18-cv-04865-EMC, 2018 WL 6182753, at *4 (N.D. Cal. Nov. 27, 2018) (appointing movant whose "interests . . . cover most of the persons/entities likely to be in the class . . . and thus can most adequately represent the class"). Accordingly, Mr. Jin is not only the "most adequate plaintiff" under the PSLRA, but the best possible candidate to ensure the interests of the entire universe of harmed UCO investors are represented.

### C.      Mr. Jin Did not Engage in Short Selling or Purchase Put Options

Danino makes the uninformed argument that Mr. Jin engaged in short selling and/or transacted in put options during the Class Period in an effort to profit from the decline in UCO shares, thereby rendering him unfit to represent the Class. *See* ECF No. 47 at 5. This, according to Danino, "call[s] into question the accuracy of [Mr. Jin's] declaration," because of his statement that he transacted in UCO securities to profit from a rebound in the price of oil. *See id.* at 6.

Mr. Jin, however, did not engage in any short selling or purchase put options during the Class Period, both of which would benefit from a decline in UCO shares. Instead, Mr. Jin *sold* put options, betting that the price of UCO shares would *not* decline.[7] In selling put options, Mr.

---

[7] While counsel for Danino include the correct definition for a put option in their opposition brief (*see id.*), they fail to consider that there are two sides of the transaction—one side seeks to benefit from a decline in the security price (purchaser) and the other seeks to profit from a lack thereof (seller).

Jin hoped to capture a profit in the premium paid by the buyer for the option, which option would expire as worthless in the event the price of UCO shares never declined below the strike price. Had counsel for Danino even performed a cursory review of Mr. Jin's Certification, the foregoing would have been clear.[8] As such, Mr. Jin respectfully requests that the Court deny Danino's factually incorrect argument.

## II.     THE MOTIONS OF QU AND DANINO SHOULD BE DENIED

As Mr. Jin has the largest financial interest out of all competing movants and also satisfies the typicality and adequacy requirements of Rule 23, he is entitled to appointment as Lead Plaintiff. *Alibaba Grp. Holding*, 102 F. Supp. 3d at 535–36 ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status . . . .") (quoting *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir.)). The Court's inquiry should thus begin and end with Mr. Jin. *Stone v. Agnico-Eagle Mines Ltd.*, 280 F.R.D. 142, 146 (S.D.N.Y. 2012) (appointing movant with largest loss after only analyzing said movant and finding PSLRA criteria satisfied). Accordingly, the plain text of the PSLRA mandates the denial of Qu and Danino's motions.

Moreover, by urging the Court to disqualify Mr. Jin because of his options transactions, Qu and Danino have already demonstrated their antagonism to all those putative Class members with claims stemming from options. This conduct is not illustrative of someone seeking to step into the role of fiduciary to the *entire* Class, and thus raises grave concerns as to the purported adequacy of both Qu and Danino. *See, e.g.*, *Deering v. Galena Biopharma, Inc.*, No. 3:14-cv-00367-SI, 2014 WL 4954398, at *11 (D. Or. Oct. 3, 2014) (disqualifying lead plaintiff movant for making arguments "directly at odds with the interests of . . . proposed class [members],"

---

[8] Even Qu recognized that Mr. Jin sold put options. *See* ECF No. 46 at 1.

calling into question ability to "act as effective advocates for all class members"). Conversely, Mr. Jin, as the presumptive Lead Plaintiff who transacted in both options and shares, offers the Class the broadest representation, and will thus advocate on behalf of the entirety of the Class. Further, based on his financial interest which dwarfs that of the opposing movants, Mr. Jin is clearly the most incentivized to do so. The motions of Qu and Danino should be denied.

## CONCLUSION

For the foregoing reasons, Mr. Jin respectfully requests that the Court grant his motion and enter an Order: (1) appointing Mr. Jin as Lead Plaintiff; (2) approving Mr. Jin's selection of Labaton Sucharow as Lead Counsel for the Class; and (3) granting such other and further relief as the Court may deem just and proper.

Dated: October 20, 2020

Respectfully Submitted,

*/s/ Francis P. McConville*

**LABATON SUCHAROW LLP**
Christopher J. Keller
Eric J. Belfi
Francis P. McConville
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
fmcconville@labaton.com

*Counsel for Proposed Lead Plaintiff Edmund Jin and Proposed Lead Counsel for the Class*

13