**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LUCIANO DI SCALA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> PROSHARES ULTRA BLOOMBERG CRUDE OIL, PROSHARE CAPITAL MANAGEMENT LLC, PROSHARES TRUST II, MICHAEL L. SAPIR, TIMOTHY N. COAKLEY, and TODD B. JOHNSON, <br><br> Defendants. | Case No. 1:20-cv-05865-NRB |

**SURREPLY IN FURTHER SUPPORT**
**OF MOTION OF HONGGUI QU FOR APPOINTMENT AS**
**LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

Lead Plaintiff Movant Honggui Qu ("Qu") respectfully submits this surreply in response to Edmund Jin's ("Jin's") reply memorandum of law (Dkt. No. 53, "Jin Reply"), pursuant to the Court's October 22, 2020 Order.

## I.  PRELIMINARY STATEMENT

Edmund Jin is subject to multiple unique defenses that disqualify him from appointment as lead plaintiff.  Jin sold a large number of put option contracts, betting on a hope that there would be a "rebound in the price of oil."  These massive sales of put options, which directly caused 82% of Jin's losses, are not covered by the Class definition in this action—which covers the ***purchase*** or ***acquisition*** of securities, but not the ***sale*** of securities.  Since almost all of Jin's losses were caused by transactions outside the Class definition, Jin is atypical of the class he seeks to represent, and he is subject to unique defenses that should not become a burden on the rest of the Class.[1]  As such, Jin's motion should be denied.  Qu, however, does not suffer from any of these defects, and as the movant with the next largest loss, he should be appointed as lead plaintiff.

## II.  JIN CANNOT BE APPOINTED AS LEAD PLAINTIFF BECAUSE HE IS ATYPICAL OF THE CLASS HE SEEKS TO REPRESENT AND SUBJECT TO UNIQUE DEFENSES

"[T]o rebut the presumption in favor of the movant with the greatest financial loss, there must be 'proof' of a non-speculative risk that the movant will not be adequate." *Schaffer v. Horizon Pharma Plc*, No. 16 Civ. 1763 (JMF), 2016 WL 3566238, at *2 (S.D.N.Y. June 27, 2016). "Before disqualifying a potential lead plaintiff on [the basis that he is subject to a unique defense], the Court need not conclude that the defense is likely to or will succeed." *Gross v. AT*

---

[1] Jin's atypicality is underscored by the fact that he is not an investment specialist, but a restaurateur and CEO of a sourcing company, who suffered no personal loss in this action, but instead was essentially gambling with funds provided by a benefactor (a Mr. Zhao). Jin has provided little information regarding the source of the tens of millions of dollars Mr. Zhao allowed Jin to control.

*& T Inc.*, No. 19 Civ. 2892 (VEC), 2019 WL 3500496, at *2 (S.D.N.Y. July 31, 2019).  Instead, "it must only find at least a potential that the presumptively most adequate lead plaintiff will be subject to unique defenses." *In re Hebron Tech. Co., Ltd. Sec. Litig.*, No. 20 CIV. 4420 (PAE), 2020 WL 5548856, at *7 (S.D.N.Y. Sept. 16, 2020) "This approach protects members of the putative class, because even ultimately unsuccessful unique defenses may divert attention from the substance of the basic claim, and class members are entitled to be represented by someone unhindered by such distractions." *Id.*  Here, there is certainly a non-speculative risk that Jin's sales of put options that resulted in almost all of his losses will hinder the Class, necessitating a finding that he is atypical.

### A.    Jin's Losses Are Almost Entirely Attributable To Transactions That Fall Outside The Class Definition

Almost all of Jin's transactions, which make up approximately 82% of his losses, are the result of transactions that are not included in the Class definition.  As Jin admits, he sold (or "wrote") put options during the Class Period, which allowed the buyers of these put options to force Jin to purchase UCO shares at above market prices.  *See* Dkt. Nos. 24-3 & 24-4.  Writing put options is selling securities, not buying securities.  *See* "Introduction to Put Writing," *Investopedia.com* ("Writing [a put option], in this case, means selling a put contract in order to open a position. And in exchange for opening a position by selling a put, the writer receives a premium or fee.").[2]  As Jin has admitted, he (and all other movants) "specifically seeks to be appointed on behalf of a putative class of those who **purchased or otherwise acquired** [UCO] securities from March 6, 2020 through April 27, 2020, inclusive." Dkt. No. 22 at 1.[3]  His sales of put options are thus not included in the Class definition.

---

[2] Available at https://www.investopedia.com/trading/introduction-to-put-writing/

[3] Unless otherwise stated, all internal citations and quotations are omitted and all emphasis is added.

Faced with this damaging reality, Jin tries to obscure the nature of his transactions by misleadingly referring to these sales as simply "options transactions." Dkt. No. 53 at 6. However, no matter what Jin calls them, his transactions were sales, not purchases.[4] As such, Jin's arguments that courts often "appoint purchasers of one type of securities [options] to represent purchasers of other securities [common stock]" is irrelevant. *See* id. at 6. For the same reason, Jin's argument that, if options transactions are included in the class definition, competing movants must show that the options themselves were atypical, is also irrelevant. *See id.* at 7-8. Moreover, Jin's claim that he "as did all members of the Class, transacted in UCO securities at artificially inflated prices in reliance on Defendants' allegedly false and misleading statements" (*Id.* at 8), is a red herring that has nothing to do with the instant action because his transactions are not covered by the Class definition.

Similarly, Jin's citations to cases involving individuals that purchased options during a class period, rather than selling put options and being forced to acquire stock at above market prices as result thereof, are inapposite. For example, in *In re LightInTheBox Holding Co., Ltd. Sec. Litig.*, the movant at issue had **purchased call options** and ADSs during the class period. No. 13-cv-6016-PKC, 2013 WL 6145114, at *4 n.3 (S.D.N.Y. Nov. 21, 2013) (cited in Jin Reply at 6). Likewise, in *Freudenberg v. E\*Trade Fin. Corp.*, the movant that was appointed lead plaintiff had **purchased contracts for difference**, a type of derivative security, **during the class period**, which the Court held were covered in the class definition that included class period purchases of securities. No. 07-cv-10400, 2008 WL 2876373, at *6 (S.D.N.Y. July 16, 2008)

---

[4] Likewise, throughout his reply, Jin falsely claims that Qu is arguing that he is atypical simply because he purchased options. *See, e.g.*, Dkt. No. 53 at 4 ("Qu … attempt[s] to argue that Mr. Jin is atypical simply for having a financial interested arising preliminarily from transactions related to options."). Qu is actually arguing that Jin is atypical because of his specific writing/sales of put options.

(cited in Jin Reply at 6-7); *see also Hall v. Medicis Pharm. Corp.* No. 08-cv-1821-PHX-GMS, 2009 WL 648626, at \*4-5 (D. Ariz. Mar. 11, 2009) (cited in Jin Reply at 6-8) (appointing a movant as lead plaintiff that purchased put options during the class period).

### B.    Jin's Transactions Will Become A Distraction That Harms The Class

There is no doubt that defendants will make Jin's sale of put options a focus at class certification and at trial. This will bring to the forefront the issue of whether a class representative that wrote/sold put options and whose losses were primarily the result of these transactions, which are not covered by the Class definition, can be a fiduciary for a class that *only covers* those that "purchased or otherwise acquired" the securities at issue.  This is certainly a conflict that makes Jin atypical.  As such, the present situation is comparable to that in *Cook v. Allergan, PLC* where the court found that a movant whose losses came primarily from options was atypical of a class of common stock purchasers. No. 18 CIV. 12089 (CM), 2019 WL 1510894, at \*2 (S.D.N.Y. Mar. 21, 2019) (finding movant's options transactions made him atypical of a class of common stock purchasers since his appointment "would very likely []introduce factual issues irrelevant to stockholder class members.").[5]  Likewise, defendants will make the fact that Jin purchased most of his common stock at non-market prices (due to his writing/sale of put options) a major focus of the litigation going forward.[6]  This is another unique defense he faces that makes him atypical.  *See In re Saxon Sec. Litig.*, No. 82 CIV. 3103, 1984

---

[5] Jin's attempts to distinguish the case fail.  *See* Dkt. No. 53 at 10.  Neither the preference for institutional investors nor the exclusion of a movant's options losses, which no longer made him the largest movant, were given as reasons for finding the movant atypical. Instead, the court reasoned that the movant had transactions that were different from the class – just as Jin does here.  This was the only reason provided for finding the movant atypical and subject to unique defenses. *See Allergan*, 2019 WL 1510894, at \*2.

[6] Due to his sale of put options, Jin was forced to purchase shares of common stock at prices significantly above market prices.  For example, he purchased stock at $2.00 and $2.50 between April 15-17, inclusive, when the market high for the same stock was only $1.72 during that period. Dkt. No. 24-4. This is atypical of the Class that only purchased shares at market prices.

WL 2399, at *1 (S.D.N.Y. Feb. 23, 1984) (rejecting individual as a class representative that had purchased shares at non-market prices due to options).[7]

There is a very real risk that these issues will become a distraction at trial. In fact, "[a]s the debate between [the three competing movants here] aptly illustrates, there is a real risk that the idiosyncrasies of [Jin's] purchases would become just such a distraction at trial, were [Jin] appointed lead plaintiff, with his trading serving as a proxy for the class." *Hebron*, 2020 WL 5548856, at *7. Thus, Qu "has adduced proof—*i.e.*, non-speculative evidence []—that [Jin] is subject to this arguable defense." *Id.* And the Court should reject Jin's motion due to his atypicality. *See id.* at *8-9 (rejecting movant's motion because "the cottage industry of issues surrounding [movant's] purchase of Hebron shares would saddle, or at least potentially saddle, his claims with unique defenses. These could well divert attention from the substance of the basic claim and needlessly imperil the claims of the class.").

## III.  CONCLUSION

For the foregoing reasons, Qu respectfully requests that the Court deny Jin's motion on the basis that he is inadequate, atypical, and subject to unique defenses; and grant Qu's motion appointing Qu as lead plaintiff and approving Qu's selection of lead counsel.

Respectfully submitted,

Dated: October 30, 2020            **GLANCY PRONGAY & MURRAY LLP**

By:  */s/ Gregory B. Linkh*
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

---

[7] Moreover, Qu requested information regarding Jin's pre-Class Period transactions. Jin failed to provide such information. As such, it is quite possible that Jin engaged in similar or other risky, speculative transactions prior to the Class Period that could further demonstrate his atypicality and become a target for the defendants at class certification and trial.

-and-

Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
info@glancylaw.com

*Counsel for Honggui Qu and Proposed Lead
Counsel for the Class*

6

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On October 30, 2020, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 30, 2020, at New York, New York.

*/s/ Gregory B. Linkh*
Gregory B. Linkh