```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
LUCIANO DI SCALA, Individually and On
Behalf of All Others Similarly
Situated,                                      MEMORANDUM AND ORDER

                    Plaintiff,

          - against -                          20 Civ. 5865 (NRB)

PROSHARES ULTRA BLOOMBERG CRUDE OIL,
PROSHARE CAPITAL MANAGEMENT LLC,
PROSHARES TRUST II, MICHAEL L. SAPIR,
TIMOTHY N. COAKLEY, and TODD B. JOHNSON,

                    Defendants.
-------------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

The above-captioned class action is brought against ProShares Ultra Bloomberg Crude Oil, ProShare Capital Management LLC, ProShares Trust II, Michael L. Sapir, Timothy N. Coakley, and Todd B. Johnson by a putative class of "all investors who purchased or otherwise acquired UCO securities from March 6, 2020 and April 27, 2020, inclusive." ECF No. 1 ¶ 1. The class action complaint alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5. Pending before the Court are motions for appointment of lead plaintiff and lead counsel.

Defendant ProShares Ultra Bloomberg Crude Oil is an exchange traded fund ("ETF") that trades on the NYSE Arca stock exchange under the ticker "UCO." ECF No. 1 ¶ 19. Because most retail

1

investors are not equipped to buy and sell barrels of oil or authorized to trade oil futures contracts, investors use ETFs such as UCO to make investments based on the price of oil and to obtain investment exposure to fluctuations in oil prices. Id. ¶¶ 3, 27. UCO is intended to reflect the performance of crude oil as measured by the price of West Texas Intermediate sweet, light crude oil futures contracts traded on the New York Mercantile Exchange. Id. ¶ 2. Together, defendants are alleged to be the "creators, issuers, and operations of UCO." Id. ¶ 6.[1]

For the reasons set forth below, the Court appoints Honggui Qu as lead plaintiff and appoints Glancy Prongay & Murray LLP as lead counsel.

## DISCUSSION

### I. Appointment of Lead Plaintiff

Six applicants filed timely motions seeking to be appointed as lead plaintiff and appoint their attorneys as lead counsel.[2]

---

[1] Specifically, ProShares Trust II is a Delaware statutory trust organized into separate series, one of which is UCO. ECF No. 1 ¶ 20. ProShare Capital Management LLC is the sponsor — i.e., administrator — of ProShares Trust II. Id. ¶ 21. Defendant Michael L. Sapir is the Chief Executive Officer and a principal of ProShare Capital Management LLC. Id. ¶ 22. Defendant Timothy N. Coakley is the Chief Financial Officer and a principal of ProShare Capital Management LLC. Id. ¶ 23. Defendant Todd B. Johnson is the Principal Executive Officer of ProShares Trust II and the Chief Investment Officer and a principal of ProShare Capital Management LLC. Id. ¶ 24. Johnson also is the "principal of [ProShare Capital Management LLC and ProShares Trust II] who supervises persons who participate in making trading decisions for" UCO. Id.

[2] The Court received timely motions to be appointed lead plaintiff from: (1) Edmund Jin, represented by Labaton & Sucharow LLP (ECF Nos. 21-22, 24-25); (2) Pinchas Dan Danino, represented by The Rosen Law Firm (ECF Nos. 23, 26, 32); (3) Emir Tavukcuoglu, represented by Robbins Geller Rudman & Dowd LLP (ECF Nos. 28-29, 31, 33); (4) Advanced Wealth Management, LLC, represented by Block & Leviton LLP (ECF Nos. 34-36); (5) Honggui Qu, represented by Glancy Prongay & Murray LLP (ECF Nos. 37-39); and (6) Sergi Lucas, Michael Zarabi, Kambiz

2

One of those applicants, Advanced Wealth Management LLP, subsequently withdrew its application, see ECF No. 50; one applicant, Emir Tavukcuoglu, filed a notice of non-opposition, see ECF No. 45; and one applicant, the UCO Investor Group, abandoned its motion.  This left Edmund Jin, Pinchas Dan Danino, and Honggui Qu in contention.

### a. Legal Standard

Under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in appointing a lead plaintiff, the Court is to presume that the "most adequate plaintiff" is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice [published by a complainant];
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The PSLRA does not specify how a financial interest in the litigation is to be determined, but courts look at four factors to determine which plaintiff has the greatest financial interest in the outcome of a securities litigation: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period;

---

Zarabi, and Evgeny Karelin ("UCO Investor Group"), represented by Pomerantz LLP (ECF Nos. 41-44).

and (4) the approximate losses suffered . . . ."  In re eSpeed, Inc. Sec. Litig., 232 F.R.D. 95, 100 (S.D.N.Y. 2005).  "Pursuant to the PSLRA, the presumptive lead plaintiff is the investor with the largest financial interest in the outcome of the action[.]" Cook v. Allergan PLC, No. 18 Civ. 12089, 2019 WL 1510894, at *1 (S.D.N.Y. Mar. 21, 2019).

With respect to the requirements of Rule 23, "typicality and adequacy of representation are the only provisions relevant to the determination of lead plaintiff under the PSLRA."  Shi v. Sina Corp., No. 05 Civ. 2154, 2005 WL 1561438, at *2 (S.D.N.Y. July 1, 2005) (quoting In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 49 (S.D.N.Y. 1998)).  The "typicality threshold is satisfied" where the proposed lead plaintiff's claims "arise from the same conduct from which the other class members' claims and injuries arise."  Teran v. Subaye, Inc., No. 11 Civ. 2614, 2011 WL 4357362, at *5 (S.D.N.Y. Sept. 16, 2011) (internal quotation marks omitted).  "The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy."  Foley v. Transocean Ltd., 272 F.R.D. 126, 131 (S.D.N.Y. 2011).

"Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a member of the purported class that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Freudenberg v. E*Trade Fin. Corp., No. 07 Civ. 10400, 2008 WL 2876373, at *3 (S.D.N.Y. July 16, 2008) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)) (internal quotations omitted).

### b. Largest Financial Interest

Between Jin, Danino, and Qu, there is disagreement with respect to which movant suffered the largest financial loss.  In their moving papers, Jin claimed $18,208,257.26 in losses, ECF No. 22 at 2; Qu claimed $2,401,783.33 in losses, ECF No. 39-3 at 9; and Danino claimed $1,975,737.50 in losses, ECF No. 32 at 8.  As is explained in more detail below, Qu and Danino both argue that notwithstanding Jin's purported losses, he should not be the lead plaintiff because the majority of his losses arise from options-related trading activity.  As a result, they argue, Jin would be subject to unique defenses and would litigate options-based factual issues, which are not typical of the class.  Meanwhile, Danino argues that Qu's losses are inflated because he sold a substantial amount of his shares before corrective disclosures.

5

Were we considering losses alone, Jin likely would qualify as the lead plaintiff. Rosi v. Alcaris Therapeutics, Inc., No. 19 Civ. 7118, 2019 WL 5778445, at *2-4 (S.D.N.Y. Nov. 6, 2019) (appointing movant with largest financial interest). However, Qu contends — and Jin does not deny — that "almost all" of Jin's losses are the "result of massive options trades." ECF No. 46 at 2, 5. According to Qu, Jin wrote put options, which granted other investors "the right to force Jin to acquire common stock at above market prices." Id. at 2. For example, Qu states that over $6.5 million of Jin's losses arose from writing 50,000 May 8, 2020 put options with a $2.50 strike price. Id. at 5. Qu also argues that in the aggregate, at least $12.2 million of Jin's losses arose from Jin's obligation "to purchase common stock as a result of his writing of put options." Id. On this basis, Qu contends (and Jin acknowledges) that only about $3.2 million in Jin's losses "could possibly be attributable to regular common stock purchases." Id.; ECF No. 53 at 5-6.

Based on Qu's moving papers, Qu suffered the second greatest loss of $2,401,783.33. However, in Danino's opposition to Qu's motion for lead plaintiff appointment, Danino challenges Qu's loss calculation. Relying on the loss calculation method in Dura Pharms., Inc. v. Broudo, 544 U.S. 336 (2005), Danino argues that Qu improperly included in-and-out trades that occurred before the date of the first alleged partial disclosure, which Danino posits

6

to be the April 3, 2020 announcement of the reverse share split. ECF No. 47 at 6.  As a result, Danino argues, Qu actually incurred a post-disclosure gain of $311,948.64.  Id.; ECF No. 1 ¶ 64.  Qu challenges with some force Danino's characterization of a press release announcing a reverse share split as a corrective disclosure.  ECF No. 52 at 8.  Qu also challenges Danino's reliance in his opposition papers on the Dura methodology, arguing that it amounts to no more than "gam[ing] the process by shifting to different loss calculation methodologies after reviewing competing motions."  Id. at 3.  Qu further argues that application of the Dura analysis is inappropriate at this stage.  Id. at 7-8.  In fact, whereas Danino determined that Qu had a $311,948 Dura gain, Jin calculated that Qu had a $1,324,895 Dura loss.  Id.; compare ECF No. 49-1 with ECF No. 47-1.

While we are not particularly troubled by the timing of the Dura argument, we reject at this phase the application of Dura to loss calculation when the complaint alleges multiple partial disclosures.  See ECF No. 1 ¶¶ 64-69.  Dura stands for the proposition that losses incurred before a defendant's public disclosure of misconduct are not recoverable because "those losses cannot be proximately linked to the misconduct at issue in th[e] litigation."  Allergan, 2019 WL 1510894, at *3 (internal quotations omitted).  It follows that when a Court is selecting a lead plaintiff, the Court should "not take into account losses from

7

shares sold prior to corrective disclosures." Gutman v. Sillerman, No. 15 Civ. 7192, 2015 WL 13791788, at *4 (S.D.N.Y. Dec. 8, 2015). However, where, as here, the "complaint alleges multiple partial disclosures over the course of the Class Period," this Court has been "reluctant" to apply Dura at the lead plaintiff stage. Plaut v. Goldman Sachs Grp., Inc., No. 18 Civ. 12084, 2019 WL 4512774, at *4 (S.D.N.Y. Sept. 19, 2019).

In this case, in a section of the complaint titled "The Truth Emerges," the complaint alleges multiple partial disclosures, beginning on April 3, 2020 when UCO announced an impending reverse share split. ECF No. 1 ¶¶ 64-69. On this basis, Danino seeks to exclude from Qu's loss calculations any of Qu's in-and-out trades prior to April 3, 2020. ECF No. 47 at 6-7. However, the Court finds that Danino's reliance on this single allegation reflecting the low trading price of UCO's shares is insufficient to establish the date of UCO's first corrective disclosure. Without more, the Court declines to rely on the Dura methodology at the lead plaintiff stage. See Allergan, 2019 WL 1510894, at *3 (finding that "the appropriateness of employing Dura analysis at the lead plaintiff stage is subject to considerable dispute"). The Court therefore accepts Qu's calculation of his losses throughout the class period and determines that Qu has the second greatest loss of $2,401,783.33. ECF No. 39-3.

### c. Typicality and Adequacy

The presumption that Jin is the lead plaintiff may be rebutted only upon "proof" that he "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render [him] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Notwithstanding that Jin's alleged financial losses were greatest, Qu and Danino challenge Jin's typicality and adequacy. Qu and Danino argue that Jin is atypical because a substantial portion of his losses – 82% — arose from options-related transactions. ECF No. 46 at 2, 5; ECF No. 47 at 4-5; ECF No. 54 at 3-4. Jin does not deny that a large fraction of his losses are attributable to the writing – or sale — of put options. And as Jin's loss chart demonstrates, ECF No. 24-4, when the UCO share price fell below the strike prices of the put options, Jin was obligated to purchase shares of UCO at non-market prices, ECF No. 54 at 5.

Appointing Jin, whose losses overwhelmingly reflect his sale of put options, raises issues of his typicality and adequacy. Questions have been raised about whether losses arising from Jin's <u>sale</u> of put options would qualify him as member of a class of "all investors who <u>purchased or otherwise acquired</u> UCO securities from March 6, 2020 and April 27, 2020, inclusive." ECF No. 1 ¶ 1 (emphasis added). Questions also have been raised as to whether Jin was motivated by the same market incentives as class members

9

who traded shares on the open market. Undoubtedly, these questions raised at the lead plaintiff stage will remain, and are certain to become focal points at class certification.[3] Accordingly, because factual issues unique to Jin "would likely threaten to become the focus of the litigation," the Court declines to appoint Jin lead plaintiff. Andrada v. Atherogenics, Inc., No. 05 Civ. 00061, 2005 WL 912359, at *5 (S.D.N.Y. Apr. 19, 2005) (internal quotations omitted); see also Allergan, 2019 WL 1510894, at *2 (determining that proposed lead plaintiff with more than 60% of losses arising from options trading "very likely would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and he could subject the class to unique defenses, causing unnecessary conflict") (internal quotations omitted).

By contrast, Qu is typical of the class. "The typicality threshold is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise." Foley, 272 F.R.D. at 131. Qu is typical because he transacted in UCO shares and, behind Jin, suffered the most substantial loss as a result of defendants' allegedly false and misleading statements.

---

[3] Further, if there were authority to support the appointment of lead plaintiff to someone whose losses were overwhelmingly attributable to writing put options, then Jin would have presented that authority. Without such authority, Jin has not satisfied the Court that his investment history will not continue to be an issue in the case.

Danino's sole objection is based on In re Bally Total Fitness Sec. Litig., No. 04 Civ. 3530, 2005 WL 627960 (N.D. Ill. Mar. 15, 2005), which is irrelevant on its facts.  There, the court denied a lead plaintiff motion by an in-and-out trader who sold all of its stock "many months before the alleged fraud was first revealed."  Id. at *5-6.  The court reasoned that the in-and-out trader "would have to use considerable resources to establish that . . . its losses . . . were caused by the alleged fraudulent statements."  Id. at *6.  Here, by contrast, Qu held UCO shares all throughout the class period.  See ECF No. 39-3.  Accordingly, it does not appear that he would be subject to unique defenses arising from his trades throughout the class period.

Qu also appears to be an adequate lead plaintiff.  Qu has retained competent and experienced counsel.  See ECF No. 39-5.  Qu himself has a master's degree in management and he has managed his own portfolio for approximately 25 years.  ECF No. 39-4 ¶ 2. Importantly, having lost millions of dollars, Qu has incentive to "vigorous[ly] advoca[te]" on behalf of the class.  Foley, 272 F.R.D. at 131.  Qu is thus well-suited to serve as lead plaintiff.

**II.  Appointment of Lead Counsel**

The PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention."  In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig., No. 03 MDL 1529, 2008 WL 4128702, at

11

*2 (S.D.N.Y. Sept. 3, 2008) (internal quotation marks omitted). Qu has retained Glancy Prongay & Murray LLP as his counsel. Glancy Prongay & Murray LLP has experience prosecuting securities class actions, and the Court has no reason to believe that it will not adequately represent the interests of the class. Accordingly, the Court approves their selection as lead counsel.

## CONCLUSION

For the foregoing reasons, Qu is appointed lead plaintiff and Glancy Prongay & Murray LLP is appointed lead counsel. The parties are instructed to submit to the Court an agreed-upon schedule for the filing of an amended complaint, if any, and the response thereto. The Clerk of Court is respectfully directed to terminate the motions pending at docket entries 21, 23, 28, 34, 37, and 41.

**SO ORDERED.**

Dated:   New York, New York
         December 28, 2020

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE